1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA ASSOCIATION FOR THE PRESERVATION OF GAMEFOWL,<br><br>Plaintiff,<br><br>v.<br><br>STANISLAUS COUNTY,<br><br>Defendant. | Case No. 1:20-cv-01294-ADA-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION TO DISMISS BE GRANTED IN PART WITH LEAVE TO AMEND<br><br>(ECF No. 21)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

### INTRODUCTION

Currently before the Court is Defendant Stanislaus County's motion to dismiss the first amended complaint, brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 21.)  Based on the parties' briefing, the arguments presented at the hearings held on October 19, 2022, and November 2, 2022, as well as the Court's record, the Court recommends Defendant's motion to dismiss be granted in part, and Plaintiff be granted leave to submit an amended complaint subject to the parameters explained below.

## II.

### BACKGROUND

Plaintiff filed this action on September 9, 2020.  (ECF No. 1.)  The action was initially

1

assigned to District Judge Dale A. Drozd.  Plaintiff's initial complaint asserted the same causes of action as the now operative first amended complaint: (1) Regulatory Taking in Violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Corresponding California Constitutional Provisions, 42 U.S.C. § 1983, 28 U.S.C. § 2200, *et seq.*, Cal. Code of Civil Proc. § 1060, *et seq.*; (2) Violation of the Substantive Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and Corresponding California Constitutional Provisions, 42 U.S.C. § 1983, 28 U.S.C. § 2200, *et seq.*, Cal. Code of Civil Proc. § 1060, *et seq.*; (3) Violation of the Procedural Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and Corresponding California Constitutional Provisions, 42 U.S.C. § 1983, 28 U.S.C. § 2200, *et seq.*, Cal. Code of Civil Proc. § 1060, *et seq.*; and (4) Forfeiture of Vested Property Rights Violation of the Fifth Amendment, and the Substantive Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and Corresponding California Constitutional Provisions, 42 U.S.C. § 1983, 28 U.S.C. § 2200, *et seq.*, Cal. Code of Civil Proc. § 1060, *et seq.*  (ECF Nos. 1, 19.)

On October 29, 2020, Defendant filed a motion to dismiss contending that: (1) all claims were time-barred by the 90 day limit pursuant to California Government Code § 65009; (2) Plaintiff failed to allege sufficient facts to establish standing; (3) Plaintiff's third claim for procedural due process violation was legally insufficient; (4) Plaintiff's first claim for regulatory taking was legally insufficient; (5) Plaintiff's first claim for relief was an unripe as-applied challenge; (6) Plaintiff's second claim for substantive due process violation was legally insufficient; and (7) Plaintiff's fourth claim for forfeiture failed to allege sufficient facts.  (ECF No. 7.)  On February 7, 2022, District Judge Drozd granted Defendant's motion to dismiss with leave to amend.  (ECF No. 18.)  The District Judge dismissed all claims as time-barred under the statute of limitations, and did not directly address the remainder of the Defendant's challenges. Plaintiff was granted leave to amend "in an abundance of caution . . . in part because of the potential that plaintiff could allege an as-applied substantive due process challenge."  (ECF No. 18 at 7.)

On February 27, 2022 Plaintiff filed the operative first amended complaint ("FAC"). (ECF No. 19.)  Plaintiff brings the same four causes of action as the original complaint.  (ECF

Nos. 1, 19.)  Plaintiff's FAC proffers that Plaintiff California Association for the Preservation of Gamefowl ("CAAPG") is a non-profit, incorporated association that has as its mission: the bonding together of lovers of gamefowl in order to perpetrate and improve the species; to provide standards for the maintenance and improvement of various strains of gamefowl; to hold shows throughout the State of California to give members opportunities to show and test their birds against the highest standards; to educate members regarding improved methods for health, breeding, caring and protecting gamefowl; and to protect the legal rights of its constituent members to breed, raise and enjoy their gamefowl peaceably and lawfully.  (FAC ¶ 8.)

Plaintiff alleges that effective November 16, 2017, the County of Stanislaus made it unlawful for anyone other than a commercial farmer to own a rooster, even if their ownership was responsible, in compliance with other laws, and caused no inconvenience to anyone else in the community (the "Ordinance").[1]  (FAC ¶ 1.)  Plaintiff alleges that as of November 16, 2017, the Ordinance became fully retroactive and outlawed the ownership of roosters by county residents without any exemption that would account for  pre-existing, legitimate uses that predate the Ordinance's enactment.  (FAC ¶ 2.)  Plaintiff alleges that as of this retroactive date, law-abiding rooster owners were obligated to destroy or get rid of their roosters, which only served to take beloved animals out of the possession of those who respect and appreciate them and render them even more available to those inclined to abuse animals and violate the law.  (FAC ¶ 2.)  Plaintiff submits that the Ordinance sought to prohibit that which was already illegal and actionable – cockfighting and nuisance activity – but it trampled over the well-established property rights of law-abiding citizens in the process.  (FAC ¶ 3.)  As most relevant to the instant motion to dismiss and the parties' arguments regarding the scope of leave to amend, Plaintiff added the following allegations to the FAC, that were not contained in the initial complaint:

> 9.  CAAPG's Stanislaus County membership includes persons who have become subject to the challenged ordinance since September 9, 2018, persons who have desisted form their protected activities within that same time period, as well as those who currently are in violation of the law due to their present and continuing

---

[1] The Court uses "Ordinance" for efficiency throughout this findings and recommendations to refer to the challenged law generally.

disobedience of said ordinance and its ongoing enforcement since it was enacted. This action was filed less than two years after a CAAPG member became subject to its enforcement, less than two years after CAAPG members were harmed by the ordinance, and also less than two years since the ordinance's continued enforcement. These claims are therefore timely despite the 2017 enactment date of the subject ordinance. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993) (the statute of limitations of a statute is based on its enforcement date, not its enactment date); *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 518, 522 (6th Cir. 1997) ("[t]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations" and a statute "does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment"). Moreover, CAAPG's membership are having their rights denied each day the challenged ordinance remains in effect to the extent that it continues to outlaw their protected activities, and they risk legal sanction due to its continued validity. *See Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997); *Maldonado v. Harris*, 370 F.3d 945, 956 (9th Cir. 2004); *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012)(holding that constitutional and statutory claims were not barred by the statute of limitations where the defendant committed continuing acts within the limitations period, even if said acts related to a preexisting policy of which the plaintiff was aware and subject to outside the limitations period); *see also Flynt v. Shimazu*, 940 F.3d 457, 464 (9th Cir. 2019) (the continued existence of a statute, even if enacted outside the limitations period, and the realistic threat of future enforcement is sufficient to render a facial challenge to the statute timely); *Kuhnle Brothers*, 103 F.3d at 521-522 (finding that the plaintiff "suffered a new deprivation of constitutional rights every day that [ the challenged enactment] remained in effect."). If the contrary were true, any two years would be insulated from challenge, even if its continued existence and enforcement cause additional wrongs. *See Scheer v. Kelly*, 817 F.3d 1183, 1188 (9th Cir. 2016).

(FAC ¶ 9 (emphasis omitted).)

On March 10, 2022, Defendant filed a notice of motion and motion to dismiss Plaintiff's first amended complaint. (ECF No. 21; Def.'s Mot. Dismiss ("Mot."), ECF No. 21-1.) On March 24, 2022, Plaintiff filed an opposition brief. (Pl.'s Opp'n Mot. Dismiss ("Opp'n"), ECF No. 23.)

On August 24, 2022, following her appointment, this action was reassigned to District Judge Ana de Alba for all further proceedings. (ECF No. 25.) On September 12, 2022, the pending motion to dismiss was referred to assigned Magistrate Judge for the preparation of findings and recommendations, and/or other appropriate action. (ECF No. 28.) On October 19,

1   2022, the Court held a hearing on the motion to dismiss.  (ECF No. 32.)  Kevin Little appeared

2   on behalf of Plaintiff via video, and John Whitefleet appeared on behalf of Defendant via video.

3   (Id.)  At the hearing, the issue of a lack of reply briefing was discussed.  Having no objection

4   from the Plaintiff, the Court ordered a reply brief to be filed on or before October 26, 2022, and

5   continued the hearing on the motion to dismiss until November 2, 2022.  (Id.)

6       On November 2, 2022, the Court held a further hearing on the motion to dismiss.  (ECF

7   No. 34.)  Kevin Little appeared on behalf of Plaintiff via video, and John Whitefleet appeared on

8   behalf of Defendant via video.  (Id.)  The Court took the matter under submission.

9                                              **III.**

10                                      **LEGAL STANDARD**

11      Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

12   the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A

13   motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro

14   v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, "[a]ll allegations

15   of material fact are taken as true and construed in the light most favorable to the nonmoving

16   party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The pleading

17   standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual

18   allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me

19   accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

20   Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-

21   pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However,

22   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

23   statements, do not suffice."  Id. at 678.  To avoid a dismissal under Rule 12(b)(6), a complaint

24   must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550

25   U.S. at 570.

26      In deciding whether a complaint states a claim, the Ninth Circuit has found that two

27   principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint

28   "may not simply recite the elements of a cause of action, but must contain sufficient allegations

of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Starr, 652 F.3d at 1216. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988)).

Courts freely grant leave to amend a complaint which has been dismissed. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (same).

## IV.

## DISCUSSION

Defendant moves to dismiss on the following grounds: (A) any re-stated facial challenge is contrary to the prior order dismissing said claims or is otherwise untimely; (B) as to any as-applied challenge, Plaintiff fails to allege sufficient facts of enforcement or application of the Ordinance within the applicable statute of limitations, whether the 90-day limit pursuant to California Government Code Section 65009, or two-year limitation under California Code of Civil Procedure Section 335.1; (C) Plaintiff fails to allege sufficient facts to establish standing; (D) Plaintiff fails to plead sufficient facts for a procedural due process violation; (E) Plaintiff's claim for regulatory taking under the Fifth Amendment fails to allege sufficient facts; (F) Plaintiff's as-applied claim is not ripe for failure to allege a final decision; (G) Plaintiff's claim under the Fourteenth Amendment is really a Fifth Amendment claim, and/or fails to state sufficient facts of a substantive due process violation; and (H) Plaintiff fails to plead sufficient facts to support a forfeiture claim.

6

1
2

**A.    Defendant's Motion to Dismiss Facial Challenges to the Ordinance as Barred by the Statute of Limitations**

3
4
5
6
7
8
9
10
11

A statute of limitations defense may be raised in a Rule 12(b)(6) motion only if the running of the statute is apparent on the face of the complaint.  <u>Huynh v. Chase Manhattan Bank</u>, 465 F.3d 992, 997 (9th Cir. 2006).  "Dismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.' " <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 991 (9th Cir. 1999) (internal citations omitted).  The applicable limitations period runs from accrual of the claim(s), which occurs when plaintiff has a complete and present cause of action, or in other words, when a plaintiff "knows or has reason to know of the actual injury."  <u>Flynt v. Shimazu</u>, 940 F.3d 457, 462 (9th Cir. 2019).

12
13
14
15
16
17
18
19
20
21
22
23

Defendant argues inclusion of any facial challenge as a cause of action is contrary to the Court's prior order on dismissal; that any attempt to renew a facial challenge should be rejected; and in any event, the additional facts provided in paragraph 9 of the FAC supports a finding that a facial challenge is untimely.  (Mot. 5-7.)  Defendant proffers the additional paragraph contains citations to caselaw that references timely facial challenges, and Defendant "infers from this that CAAPG is implicitly arguing its facial challenges are timely (FAC ¶ 9)."  (Mot. 7.)  Defendant argues such inclusion would be contrary to the Court's order granting dismissal, or improperly rearguing the issue.  (Mot. 7.)  Plaintiff's written opposition is more pointedly targeted to the issue of whether any as-applied challenge is timely within the statute of limitations, (Opp'n 8-10), addressed in the following section.[2]  Nonetheless, as is apparent in the FAC and written opposition, Plaintiff does indeed maintain both facial and as-applied claims. The Court first turns to the previous dismissal order.

24    / / /

25    / / /

26

---

27
28

[2]  Given the arguments and applicable law relied on by the Court as to both facial and as-applied challenges, the Court notes there is overlap between the findings in this section and the following section pertaining to the as-applied challenges, and the Court incorporates caselaw and factual findings from each respective section into the other, as relevant.

1   District Judge Drozd's previous order granting the Defendant's motion to dismiss with

2   leave to amend, found and ordered as follows:

3       The complaint now before the court was filed on September 9,
        2020. (Doc. No. 1.) To be timely, each cause of action asserted in
4       that complaint must have accrued between September 9, 2018, and
        September 9, 2020.

5
        As noted above, plaintiff has asserted four causes of action, all
6       brought pursuant to § 1983 for alleged constitutional violations.
        **Although plaintiff alleges each claim both facially and as-**
7       **applied, plaintiff offers no factual allegations suggesting that**
        **the as-applied challenges accrued any later than the date the**
8       **ordinance was enacted.** Indeed, plaintiff argues elsewhere in its
        brief in opposition to the pending motion that this action is ripe for
9       decision because "[w]here an ordinance renders an activity
        absolutely illegal and does not permit a variance, one does not
10      need to be sought to establish finality. An ordinance that is
        'unconditional and permanent' does not require action to
11      demonstrate finality.'" (Doc. No. 10 at 9) (quoting *Vacation
        Village, Inc. v. Clark County, Nevada*, 498 F.3d 902, 912 (9th Cir.
12      2007)). Furthermore, under federal law, the statute of limitations
        begins to run when a potential plaintiff knows or has reason to
13      know of the asserted injury. *Action Apartment Ass'n v. Santa
        Monica Rent Control Bd.*, 509 F.3d 1020, 1026–27 (9th Cir. 2007).
14      Here, in its complaint, plaintiff alleges that the zoning ordinance
        was unconstitutional the moment it was enacted. (Doc. No. 1 at ¶
15      15.) Nothing alleged in the complaint suggests plaintiff was not
        immediately aware of the ordinance. In fact, plaintiff appears to
16      have filed objections to the ordinance during the Stanislaus County
        Department of Planning and Community Development's
17      deliberations regarding adoption of the ordinance. (*Id.* at 32–34.)
        Lastly, plaintiff has not alleged in its complaint that the ordinance
18      has been enforced against its members. **Allegations of such**
        **enforcement would almost certainly be necessary to support an**
19      **as-applied claim that accrued within the statute of limitations.**
        **Without allegations that plaintiff's members were in fact**
20      **penalized under the ordinance, the only possible injury to**
        **plaintiff or its members stems from the ordinance's enactment**
21      **over two-years before the filing of the complaint in this action.**
        In moving to dismiss, defendant even points out that it has not yet
22      enforced the ordinance and nonetheless plaintiff has failed to
        address that argument. (*See* Doc. No. 7-1 at 2, 10.)

23
        . . .    All of the claims that plaintiff brings are, at the very least,
24      subject to the two-year statute of limitations since each is alleged
        pursuant to § 1983. *See, e.g.*, *Levald, Inc. v. City of Palm Desert*,
25      998 F.2d 680, 689 n.4 (9th Cir. 1993) (applying § 1983 statute of
        limitations to regulatory takings claim); *Lull v. County of Placer*,
26      No. 2:19-cv-02444-KJM-AC, 2020 WL 1853017, at *8 (E.D. Cal.
        Apr. 13, 2020) (applying two-year bar to procedural due process
27      claim); *Ambrose v. Coffey*, No. 08-cv-1664-LKK, 2012 WL
        5398046, at *5 (E.D. Cal. Nov. 2, 2012) (applying two- year time
28      bar to a substantive due process claim). **Based on the facts alleged**

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**in the complaint, plaintiff's claims accrued on November 16, 2017, the date the challenged ordinance was enacted.** (Doc. No. 1 at ¶ 1.) Plaintiff's claims became time-barred on November 16, 2019. Yet plaintiff did not file its complaint in this action until September 9, 2020, well after the arguably broadest applicable statute of limitations had expired. (*See id*.) Accordingly, the court will grant defendant's motion to dismiss plaintiff's complaint as time-barred. . . .

. . .   **[B]ased on the facts alleged in the complaint, it appears clear that none of plaintiff's claims accrued within any arguably applicable statute of limitations, suggesting that any amended complaint would prove futile. Nevertheless, in an abundance of caution, the court will grant plaintiff leave to amend its complaint. The court does so in part because of the potential that plaintiff could allege an as- applied substantive due process challenge.** *See Levald*, 998 F.2d at 691. The court emphasizes, however, that at this point, plaintiff has alleged no facts suggesting such a claim can be stated which would be timely filed within the two-year limitations period. Plaintiff is therefore warned that it should only file a first amended complaint if it can do so in good faith.

(ECF No. 18 at 5-7 (emphasis added).)

Thus, the District Judge noted Plaintiff's allegation that "the zoning ordinance was unconstitutional the moment it was enacted," and emphasized "[n]othing alleged in the complaint suggests plaintiff was not immediately aware of the ordinance." (ECF No. 18 at 6, citing ECF No. 1 at ¶ 15.) The same cited allegation is still contained in the FAC. (See FAC ¶ 16 ("Thus, after the enactment of this provision, the continuation of the possession of more than zero roosters was not authorized; in other words, the non-commercial possession of roosters was absolutely prohibited. Moreover, as also indicated above, this prohibition was fully retroactive upon enactment.").) The Court notes that the documents attached to the initial complaint referenced in the original dismissal order pertaining to objections, (ECF No. 18 at 6, citing ECF No. 1 at 32-34), are not attached to the FAC. (See ECF No. 19.) The Court finds that even though not attached to the FAC, the Court may take judicial notice of the same documents attached to the original complaint.[3]   Nonetheless, even if the Court did not, or could not take

---

[3]  Under the Federal Rules of Evidence, a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee, 250 F.3d at 689; Tellabs, Inc. v. Makor Issues &

judicial notice of the previous attached documents, like the District Judge found previously as to the initial complaint, there is still nothing in the amended complaint that indicates the Plaintiff organization was not immediately aware of the Ordinance.   Therefore, the Court finds the analysis in the original dismissal order still supported by the law and application to the facts alleged in the complaint, despite Plaintiff's addition of paragraph 9.

Turning to the opposition, Plaintiff's argument Section I concludes by stating: "Plaintiff filed its First Amended Complaint in good faith, indicating that the ordinance has been enforced against its members and that the as applied its [sic] claim accrued within an applicable statute of limitations period."   (Opp'n 9.)   Again, Plaintiff's opposition quotes paragraph 9 of the FAC verbatim.   (Id.; FAC ¶ 9.)   The next section of the opposition, Plaintiff's argument Section II, then begins: "Each of CAAPG's claims for relief presents facial and as-applied challenges under both federal and state law and requests both legal and equitable relief, for harms that are retrospective, ongoing, and likely to reoccur in the future."   (Id.)   The Court turns to examine the caselaw cited, and other relevant law.   For the reasons explained below, the Court concludes that Plaintiff has presented no clear rationale as to why any facial challenge is proper in light of the

---

Rights, Ltd., 551 U.S. 308, 322 (2007); Bennett v. Medtronic, Inc., 285 F.3d 801, 802 n.2 (9th Cir. 2002).   As a general rule, the court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion. United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011); United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003) ("When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond.").   There are two exceptions to this rule: when the complaint necessarily relies on the documents; or where the court takes judicial notice of documents.   Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001); Ritchie, 342 F.3d at 908 ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

At multiple points, Defendant's motion refers to the exhibits attached to Plaintiff's initial complaint, however, Plaintiff's amended complaint does not include any attachments.   Although an amended complaint supersedes the previous, the Court finds it may properly take judicial notice of the exhibits attached to the initially filed complaint, particularly given the documents were referenced in part in the previous order on dismissal.   See Clifford v. Regents of Univ. of California, No. 2:11-CV-02935-JAM, 2012 WL 1565702, at *5 (E.D. Cal. Apr. 30, 2012) ("The Court grants the request for judicial notice of Plaintiff's original and amended complaint in the present action because those documents are already before the Court."), aff'd, 584 F. App'x 431 (9th Cir. 2014).   Aside from a pointed objection to the Court taking judicial notice of statistics within a document (Opp'n 14), Plaintiff does not expressly object to the Defendant's request for judicial notice or its reliance on the documents attached to the initial complaint. At a later point in this findings, the Court finds in agreement with Plaintiff that it would be improper to utilize the statistics referenced in the documents.   See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").   Therefore, the Court grants Defendant's request for judicial notice, except for where specifically qualified below.

1    Court's previous order on dismissal, nor presented a convincing legal basis or justification why

2    the governing law should be interpreted or applied differently than adjudicated in the previous

3    dismissal order.  The additional language in paragraph 9 does not add facts that would change

4    the facial analysis previously employed by Judge Drozd as to the initial complaint, particularly

5    as to a facial takings claim.

6         "A physical occupation occurs when the government physically intrudes upon private

7    property either directly or by authorizing others to do so."  Levald, Inc. v. City of Palm Desert,

8    998 F.2d 680, 684 (9th Cir. 1993) ("Levald").  On the other hand, a "regulatory taking occurs

9    when the value or usefulness of private property is diminished by a regulatory action that does

10   not involve a physical occupation of the property."  Hotel & Motel Ass'n of Oakland v. City of

11   Oakland, 344 F.3d 959, 965 (9th Cir. 2003) (quoting Levald, 998 F.2d at 684).  "A facial

12   challenge involves 'a claim that the mere enactment of a statute constitutes a taking,' while an

13   as-applied challenge involves 'a claim that the particular impact of a government action on a

14   specific piece of property requires the payment of just compensation.' "  Ventura Mobilehome

15   Communities Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1051 (9th Cir. 2004)

16   (quoting Levald, 998 F.2d at 68); Hotel & Motel Ass'n of Oakland, 344 F.3d at 965–66 (same).

17   In Levald, the Ninth Circuit stated the differences between accrual of a facial takings challenge

18   compared to other types of challenges:

19           Levald argues that because in other contexts the Supreme Court
             has allowed challenges to statutes long after they were enacted,
20           Levald should be allowed to bring an action challenging the
             enactment of a statute as a taking without just compensation at any
21           point. This argument misapprehends the differences between a
             statute that effects a taking and a statute that inflicts some other
22           kind of harm. In other contexts, the harm inflicted by the statute is
             continuing, or does not occur until the statute is enforced—in other
23           words, until it is applied. In the takings context, the basis of a
             facial challenge is that the very enactment of the statute has
24           reduced the value of the property or has effected a transfer of a
             property interest. This is a single harm, measurable and
25           compensable when the statute is passed. Thus, it is not inconsistent
             to say that different rules adhere in the facial takings context and
26           other contexts . . .

27            . . . Whether styled as a claim for damages or one for declaratory
             judgment, the facial challenge is time barred.

28

11

1  _Levald_, 998 F.2d at 688-89.  Thus, the Ninth Circuit recognized the basis for a different accrual
2  rule in the facial takings context.[4]  The _Levald_ holding as to facial takings challenges has been
3  repeatedly reinforced by the Ninth Circuit.  _See, e.g._, _Guggenheim v. City of Goleta_, 638 F.3d
4  1111, 1119–20 (9th Cir. 2010); _Colony Cove Properties, LLC v. City Of Carson_, 640 F.3d 948,
5  956 (9th Cir. 2011) ("This court recently confirmed [in _Guggenheim_] that the statute of
6  limitations for facial challenges to an ordinance runs from the time of adoption." (citing _Levald_,
7  998 F.2d at 688; _Guggenheim_, 638 F.3d at 1119)).

8        Plaintiff cites _Levald_, for the proposition that is stands for the rule that "the statute of
9  limitations of a statute is based on its enforcement date, not its enactment date."  (Opp'n 8.)
10  However, as found above, the Ninth Circuit clearly held there, and reinforced in later cases, that
11  a facial challenge in a takings context is based on the enactment date.  _Levald_, 998 F.2d at 688-
12  89; _Guggenheim_, 638 F.3d at 1119; _Colony Cove Properties_, 640 F.3d at 956.  The Ninth Circuit
13  in _Levald_ foreclosed the facial challenge, even for declaratory relief, and explained that the
14  claimant's arguments were more applicable to an as-applied challenge:

15        Levald further argues that the cause of action in this case did not
16        accrue until property values in Palm Desert increased dramatically
           years following enactment. This argument fails to acknowledge the
17        distinction between a facial and an as-applied challenge: while the
           rising property values may be relevant to an as-applied challenge,
18        they are not relevant to a claim that the very enactment of the
           statute effected a taking.

19        Levald finally contends that the statute of limitations is
20        inapplicable to its claim for declaratory judgment . . . [but]
           [w]hether styled as a claim for damages or one for declaratory
21        judgment, the facial challenge is time barred.

22  [4]  The Court notes that in analyzing takings actions, the Ninth Circuit generally looks at ripeness before addressing
      the statute of limitations.  _San Remo Hotel v. City & Cnty. of San Francisco_, 145 F.3d 1095, 1101–02 (9th Cir.
23  1998) ("Under our precedents, a facial takings claim alleging the denial of the economically viable use of one's
      property is unripe until the owner has sought, and been denied, just compensation by the state[, however,] [a]n
24  exception exists where the state does not have a 'reasonable, certain, and adequate provision for obtaining
      compensation' at the time of the taking, in which case the facial takings claim is instantly ripe.") (citations omitted).
25  The Ninth Circuit has also noted the different ripeness requirement for a facial takings claim versus as-applied, in
      relation to the accrual of a facial takings claim.  _See_ _Ventura Mobilehome_, 371 F.3d at 1052 ("However, the 'final
26  decision' [ripeness] requirement does not apply to facial takings claims because they, by definition, derive from the
      ordinance's enactment, not any implementing action on the part of governmental authorities.") (citing Levald, 998
27  F.2d at 685); _Hacienda Valley Mobile Ests. v. City of Morgan Hill_, 353 F.3d 651, 655 (9th Cir. 2003) ("Thus, if
      Hacienda's claim is treated as a facial claim it will either fail because it is not ripe, or, if it is ripe, it will be barred by
28  the statute of limitations.").  The Court addresses Defendant's motion to dismiss on grounds of ripeness below, _infra_
      Subsection IV(F).

Levald, 998 F.2d at 688-89.

Similarly, Plaintiff cites the Sixth Circuit's decision in Kuhnle for its statement that the "continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." Kuhnle Bros., Inc. v. Cnty. of Geauga, 103 F.3d 516, 522 (6th Cir. 1997) ("A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment.") (citations omitted). However, that aspect of the decision was directed at the substantive due process claim for deprivation of liberty. Id. at 521 ("Kuhnle's substantive Due Process claim for deprivation of liberty is another matter."). Indeed, directly before that discussion, the Sixth Circuit found that as to any taking of property, the "taking occurred when the resolution was enacted," quoting Levald for its holding that in "the takings context, the basis of a facial challenge is the very enactment." Id. (quoting Levald, 998 F.2d at 688). Further, the Sixth Circuit found the plaintiff's "substantive Due Process claim for deprivation of *property* [was] time-barred for the same reason," as any deprivation of property suffered was fully effectuated at the time of enactment." Id. Thus, the Court does not find Levald or Kuhnle to be supportive of Plaintiff's position as to the facial takings claim, as well as the substantive due process claim for deprivation of property.

Plaintiff's FAC and opposition states Plaintiff's "membership are having their rights denied each day the challenged ordinance remains in effect to the extent that it continues to outlaw their protected activities, and they risk legal sanction due to its continued validity." (Opp'n 8-9; FAC ¶ 9.) Plaintiff cites to Flynt, 940 F.3d at 464, for the proposition that "the continued existence of a statute, even if enacted outside the limitations period, and the realistic threat of future enforcement is sufficient to render a facial challenge to the statute timely." (Opp'n 9.) There, the Ninth Circuit stated: "[w]hen the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period commences) with each new injury." Flynt, 940 F.3d at 462. At first glance, this general language could appear to conflict with the enactment accrual rule applicable to facial takings

claims, however, the focus in <u>Levald</u> and other related cases as to a facial takings claim is indeed on the harm, and <u>Levald</u> recognized the difference between other types of claims that may impose continuing harm or not inflict harm until enforced, compared to the single harm of a facial takings claim measurable at the time of enactment.  <u>Levald</u>, 998 F.2d at 688 ("In other contexts, the harm inflicted by the statute is continuing, or does not occur until the statute is enforced—in other words, until it is applied [however,] [i]n the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest [and] is a single harm, measurable and compensable when the statute is passed.").

In <u>Flynt</u>, the Ninth Circuit indeed cited <u>Levald</u> for the general proposition that a limitations period begins to run when the claim accrues.  940 F.3d at 462.  No tension was discussed therein.  In fact, although that plaintiff urged the Ninth Circuit to "reject this rule on accrual for facial constitutional challenges," the Ninth Circuit declined, stating "just as there is no justification to treat facial challenges differently for purposes of determining whether a statute of limitations applies, there is no reason to do so for purposes of determining when a claim accrues," and that the proper test for accrual is when the plaintiff "knows or has reason to know of the actual injury."  <u>Id.</u> (citing <u>Scheer v. Kelly</u>, 817 F.3d 1183 (9th Cir. 2016)).

In <u>Flynt</u>, the Ninth Circuit did cite to the Sixth Circuit's decision in <u>Kuhnle</u>, for the proposition that "[w]hen the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period commences) with each new injury."  <u>Id.</u> at 462 (citing <u>Kuhnle</u>, 103 F.3d at 521-22).  However, as explained above, <u>Kuhnle</u> is not supportive of Plaintiff's position.  The <u>Flynt</u> opinion does not mention takings, and again does not discuss any tension with <u>Levald</u>.  The Ninth Circuit's holding only applied to a facial challenge under the dormant commerce clause.  <u>Flynt</u>, 940 F.3d at 464 ("Assuming that the enforcement of §§ 19858 and 19858.5 inflicts an injury, California's two-year statute of limitations does not bar facial challenges under the Dormant Commerce Clause.").  Therefore, the Court does not find <u>Flynt</u> to be supportive of Plaintiff's arguments as applied to this action.  <u>See also</u> <u>Bird v. Dep't of Hum. Servs.</u>, 935 F.3d 738, 744–45 (9th Cir. 2019) ("Faced with the

1    unsavory prospect of denying recovery to plaintiffs who had actually been *injured* within the

2    limitations period merely because the statute had been *enacted* outside the limitations period, the

3    courts responded by allowing the suit to proceed . . . *VHA* and *Kuhnle* did nothing more than

4    bring the Fourth and Sixth Circuits into alignment with our own view that a facial challenge to a

5    statute *generally* accrues when 'the statute is enforced—in other words, [when] it is applied.' "

6    (second emphasis added) (quoting Levald, 998 F.2d at 688))[5]; Palekaiko Beachboys Club, Inc. v.

7    City & Cnty. of Honolulu, No. 21-CV-00500-DKW-KJM, 2022 WL 716824, at *4 (D. Haw.

8    Mar. 10, 2022) ("Plaintiffs . . . contend[] that the 'continuing violations' doctrine saves their

9    claims, citing *Bird* and *Flynt* . . . [i]n *Bird*, however, the Ninth Circuit explained that 'little

10   remains of the continuing violations doctrine.' " (quoting Bird, 935 F.3d at 748–49)[6]; Besaro

11   Mobile Home Park, LLC v. City of Fremont, 289 F. App'x 232, 233 (9th Cir. 2008)

12   (unpublished) ("The statute began to run on the facial challenge when the Ordinance was enacted

13   in 1992 . . . [and] [t]he Amendment did not create a new facial cause of action because the aspect

14   of the Amendment to which Besaro objects is a continuation of an aspect of the Ordinance that

15   the City has had in place since 1992.").

16       Accordingly, the Court finds Plaintiff's facial challenges are barred by the statute of

17   limitations based on the enactment date of the Ordinance, in accord with the analysis contained

18   in the previous order of dismissal.  The Court recommends the Defendant's motion to dismiss

19   Plaintiff's facial challenges be granted, and Plaintiff's facial constitutional challenges contained

20   in counts 1-4 be dismissed without leave to amend.  The Court finds Plaintiff's attempt to renew

21   the facial challenge is against the weight of the law, and the previous order's good faith

22   ─────────────────

23   [5]  Thus, both recent cases Flynn and Bird cited to Levald without noting any tension with its clear holding.  See also
     Hasbrouck v. Yavapai Cnty., No. CV-20-08112-PCT-DWL, 2021 WL 321894, at *11 n.11 (D. Ariz. Feb. 1, 2021)

24   ("acknowledge[ing] some uncertainty in the legal landscape regarding the accrual of a claim challenging a statute's
     constitutionality" with the Ninth Circuit opining a facial challenge to a statute generally accrues when the statute is

25   enforced, *i.e.* applied [Bird], however, noting "[o]n the other hand, the Ninth Circuit has carved out exceptions to
     this general proposition in the cases of facial takings claims and facial substantive due process claims." (citing Bird,
     935 F.3d at 745; Levald, 998 F.2d at 688; Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d

26   1020, 1027 (9th Cir. 2007)).

27   [6]  The Court recognizes the Palekaiko court found significant that there were no allegations of the realistic threat of
     future enforcement as in Flynt, and that here Plaintiff alleges some threat of future enforcement.  However,

28   Palekaiko involved a first amendment claim, and again, Kuhnle distinguished between property and liberty interests,
     and Flynt involved the dormant commerce clause.

1   admonition.[7]

2          While the above caselaw is clear as to facial takings challenges, less clear based on the

3   parties' briefing is the question of whether the analysis would differ as to Plaintiff's other causes

4   of action, and whether it matters if the claims are essentially the same type of claim brought

5   under a different constitutional mechanism.  The Court finds no reason why any facial challenge

6   contained in the first amended complaint should stand in the face of the Court's previous order

7   on dismissal, the applicable law, and the facts and arguments presented.  The Court finds it

8   appropriate to apply the enactment accrual rule to each facial claim, as the same principle

9   concerning the single harm underlying a takings claim extends to each of the claims here

10  involving property, and Plaintiff has not suggested a different analysis as to the individual

11  claims, even in the face of the previous dismissal order.  See Action Apartment, 509 F.3d at 1027

12  ("Although we have not yet held that these accrual rules apply to facial substantive due process

13  claims . . .  we see no reason to distinguish between facial takings claims and facial substantive

14  due process claims [as] the *Wilson* limitations period applies to all § 1983 claims, regardless of

15  the civil right asserted [and] the logic for the accrual rules in the takings context applies with

16  equal force in the substantive due process context."); Scheer, 817 F.3d at 1187 ("As *Action

17  Apartment* noted, this logic from the takings context 'applies with equal force' to the claimed

18  deprivation of a property right in violation of substantive due process." (quoting Action

19  Apartment, 509 F.3d at 1027))[8]; Apartment Ass'n of Greater Los Angeles v. City of Los

20  Angeles, No. 220CV04479ODWJEMX, 2021 WL 2460634, at *2 n.4 (C.D. Cal. June 1, 2021)

21  ("And in the case of facial challenges asserting the Takings Clause, substantive due process, the

---

22
23  [7]  Ultimately however, the Court does not find Plaintiff acted in bad faith, given the Court's previous language indicating that the Court was granting leave "in part" due to the potential ability of Plaintiff to "allege an as-applied
24  substantive due process challenge."  (ECF No. 18 at 7.)  The District Judge's heavy utilization of Levald, reinforces the conclusion the District Judge was essentially foreclosing a renewed facial challenge, though the order did not explicitly state Plaintiff could not attempt to do so.

25  [8]  In Scheer, the Ninth Circuit tempered some of the more expansive language in Action Apartment, given the
26  context of that holding pertaining to property.  See Scheer, 817 F.3d at 1187 ("*Action Apartment* did state, in passing, that 'any facial injury to any right should be apparent upon passage and enactment of a statute[,]' [b]ut,
27  given the context, it is clear that, outside the property rights context, this statement was meant to apply only to individuals actually affected by a statute at the time of its enactment [and] [o]utside the realm of property rights, the
28  more discrete reasoning of *Action Apartment* is not pertinent." (quoting Action Apartment, 509 F.3d at 1027)).

1   Equal Protection Clause, and the Contract Clause, the statute's enactment date serves as

2   the accrual date."), aff'd in part, vacated in part, remanded sub nom. Apartment of Ass'n of

3   Greater Los Angeles v. City of Los Angeles, No. 21-55623, 2022 WL 3369526 (9th Cir. Aug.

4   16, 2022); Sadri v. Ulmer, No. CIV. 06-00430 ACK-KS, 2007 WL 869192, at *4 (D. Haw. Mar.

5   21, 2007) ("Although the Complaint does not allege a cause of action for a Fifth Amendment

6   takings in this case, the analysis applicable to the ripeness and accrual of a takings claim is

7   instructive in this context, where the Complaint alleges substantive due process, procedural due

8   process, and equal protection challenges to the application of land use regulations.").[9]

9          The Eleventh Circuit more recently noted Action Apartment approvingly, as well as

10  noting Kuhnle was supportive of the analysis.  See Hillcrest Prop., LLC v. Pasco Cnty., 754 F.3d

11  1279, 1282 (11th Cir. 2014) ("Some of our sister circuits, however, have applied this rule to

12  facial substantive due process claims alleging property deprivations . . . both the Sixth and the

13  Ninth Circuit relied heavily upon prior precedent holding that a facial takings claim accrues upon

14  enactment of the statute [and] [w]e also find this to be an appropriate starting point in our

15  analysis." (citing Action Apartment, 509 F.3d at 1027; Kuhnle, 103 F.3d at 520–21)).  The

16  Eleventh Circuit observed the Ninth Circuit distinguished between facial takings claims and

17  other types of facial challenges in Levald, and that that the Sixth Circuit then relied on Levald to

18  determine facial takings and facial substantive due process claims involving such property both

19  accrued at enactment, because the "deprivation of property . . . suffered was fully effectuated

20

21  [9]  The Sadri court noted that "[i]n addition to the takings context, the Ninth Circuit applies [the] same 'final
    decision' analysis to determine the ripeness of due process and equal protection claims (made pursuant to Section
22  1983) arising out of the application of land use regulations," and that such "analysis should also be applied to
    determine the date of accrual, for statute of limitations purposes, of due process and equal protection claims in the
23  land use context."  2007 WL 869192, at *4 (citing Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 920
    F.2d 1496, 1507 (9th Cir.1990)).  While taking no position on what caveats an equal protection claim could present,
24  the Court finds the discussion in Sadri to be instructive generally as to why here, the same statute of limitations,
    accrual principles, and ripeness rules and determinations, should apply to all claims.  The Sadri court noted an
25  exception that in " 'certain limited and appropriate circumstances,' due process and equal protection claims (made
    pursuant to § 1983) concerning land use may accrue even when related Fifth Amendment 'as applied' taking claims
26  have not yet accrued."  Id. at *5 (citing Carpinteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822,
    831 (9th Cir. 2003).  However, this does not change the analysis, and further, the due process injuries are not
27  separate from the takings injuries alleged here.  Id. ("Where plaintiff's due process and equal protection injuries are
    separate from any purported taking, independent of whether or not the governmental entity's decision-making has
28  been completed, and do not directly arise from or rely on a taking claim, those due process and equal protection
    claims will accrue even though the governmental entity has not made a final and authoritative determination of the
    development allowed on plaintiff's property.").

1   when . . . [the ordinance] was enacted, and the statute of limitations began to run at that time."

2   Hillcrest, 754 F.3d at 1282 ("The Sixth Circuit concluded that the appellant's 'substantive Due

3   Process claim for deprivation of property is time-barred for the same reason.' " (quoting Kuhnle,

4   103 F.3d at 521)).

5       Based on the above caselaw and principles underlying accrual of a facial takings claim,

6   the Court finds all of Plaintiff's facial challenges to the Ordinance accrued on the date of

7   enactment.  Action Apartment, 509 F.3d at 1027; Scheer, 817 F.3d at 1187.[10]  The Court finds

8   the statute of limitations as to all four of Plaintiff's causes of action has expired to the extent they

9   allege facial challenges, and may appropriately be dismissed without leave to amend.

10      **B.      Defendant's Motion to Dismiss As-Applied Challenges as Barred by the
11              Statute of Limitations**

12      Defendant moves to dismiss Plaintiff's as-applied challenges arguing Plaintiff fails to

13  state sufficient facts within any applicable statute of limitations.   (Mot. 7.)   The Court

14  recommends granting Defendant's motion with leave to amend.

15      1.    The Parties' Arguments

16      Defendant submits that because this case does not involve any alleged licensing,

17  permitting or any administrative enforcement actions, nor that the Stanislaus ordinance is

18  preempted by subsequent laws or conflicting ordinances, CAAPG does not really present an as-

19  applied challenge, such that California Government Code § 65009 applies to bar this action.

20  Travis v. Cnty. of Santa Cruz, 33 Cal. 4th 757, 772 n.9 (2004); Cnty. of Sonoma v. Superior Ct.,

21  190 Cal. App. 4th 1312, 1324 (2010).  On the other hand, assuming the Court continues to apply

22  California Code of Civil Procedure § 335.1's two year statute of limitations applicable to Section

23  1983 actions, Defendant argues the Court should reject the conclusory allegations at ¶ 9 of the

24  FAC as insufficiently alleging any enforcement action was taken by the County, much less

25

26

27  [10] Again, to be clear, the Court does not suggest facial challenges generally are subject to such accrual rule, as that
    would defeat the holding of Levald emphasizing the exception for takings facial challenges, but rather such claims
28  are subject to the accrual rule when the same principle of harm underlying the accrual rule is reasonably applied to
    the claims not expressly labelled a "takings" claim.

between September 9, 2018, and September 9, 2020,[11] such that Plaintiff fails to sufficiently allege the ordinance has been applied to it or its members.  (Mot. 9.)  Defendant emphasizes the new allegations at paragraph 9 of the FAC fail to identify any property address, owner, or any specific enforcement action or date of enforcement within the two year limitations period.  (Mot. 7.)

Plaintiff responds that: (1) CAAPG's Stanislaus County membership includes persons who have become subject to the challenged ordinance since September 9, 2018, persons who have desisted from their protected activities within that same time period, as well as those who currently are in violation of the law due to their present and continuing disobedience of said ordinance and its ongoing enforcement since it was enacted; and (2) this action was filed less than two years after a CAAPG member became subject to its enforcement, less than two years after CAAPG members were harmed by the ordinance, and also less than two years since the ordinance's continued enforcement.  (Opp'n 8.)  Plaintiff argues its members are having their rights denied each day the challenged ordinance remains in effect to the extent that it continues to outlaw their protected activities, and they risk legal sanction due to its continued validity. Gutowsky v. County of Placer, 108 F.3d 256, 259 (9th Cir. 1997); Maldonado v. Harris, 370 F.3d 945, 956 (9th Cir. 2004); Pouncil v. Tilton, 704 F.3d 568, 581 (9th Cir. 2012) (holding that constitutional and statutory claims were not barred by the statute of limitations where the defendant committed continuing acts within the limitations period, even if said acts related to a preexisting policy of which the plaintiff was aware and subject to outside the limitations period); see also Flynt, 940 F.3d at464; Kuhnle, 103 F.3d at 521-522.  Plaintiff submits that if the contrary were true, any statute older than two years would be insulated from challenge, even if its continued existence and enforcement cause additional wrongs.  See Scheer, 817 F.3d at 1188.

2.    The Court Recommends Granting Dismissal with Leave to Amend

The Court incorporates by way of reference, the discussion in the previous subsection, *supra* Section IV(A), as relevant to the distinctions between facial and as-applied claims.  See,

---

[11]  As stated in the original motion to dismiss, "[t]o be timely, each cause of action asserted in that complaint must have accrued between September 9, 2018, and September 9, 2020."  (ECF No. 18 at 5.)

1  e.g., Ventura Mobilehome, 371 F.3d at 1051 ("A facial challenge involves 'a claim that the mere

2  enactment of a statute constitutes a taking,' while an as-applied challenge involves 'a claim that

3  the particular impact of a government action on a specific piece of property requires the payment

4  of just compensation.' " (quoting Levald, 998 F.2d at 686)).

5       Again, the language in the previous order of dismissal only expressly stated that the

6  Court was granting leave to amend, in part, "because of the potential that plaintiff could allege an

7  as- applied substantive due process challenge."  (ECF No. 18 at 7.)  Defendant again argues the

8  Ordinance has not yet been enforced, and in light of the previous order of dismissal, the Court

9  finds the lack of such specific allegation weighs in favor of finding in favor of Defendant.

10      As noted in the previous order of dismissal (ECF No. 18 at 4), because 42 U.S.C. § 1983

11  contains no specific statute of limitations, federal courts apply the forum state's statute of

12  limitations for personal injury actions.   Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004);

13  Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004); Fink v. Shedler, 192 F.3d 911, 914

14  (9th Cir. 1999).  California's statute of limitations for personal injury actions was extended to

15  two years effective January 1, 2003.  Cal. Civ. Proc. Code § 335.1; Jones, 393 F.3d at 927;

16  Maldonado, 370 F.3d at 954-55.   Judge Drozd previously discussed the parties' competing

17  arguments regarding whether California Government Code § 65009 applies to the claims, with

18  its 90-day limitation period, and made a preliminary finding that it was "not persuaded, however,

19  that the 90-day statute of limitations set forth in § 65009 is applicable here [as] [a]lthough it

20  appears that § 65009 *could* apply based on its language, the California Supreme Court has

21  warned against applying the 90-day limit in the context of certain constitutional challenges."

22  (ECF No. 18 at 4 (citing Travis, 33 Cal. 4th at 770).)  In Travis, the California Supreme Court

23  stated: "If a preempted or unconstitutional zoning ordinance could not be challenged by a

24  property owner in an action to prevent its enforcement within 90 days of its application . . . but

25  instead . . . only in an action to void or annul the ordinance within 90 days of its enactment . . . a

26  property owner subjected to a regulatory taking through application of the ordinance against his

27  or her property would be without remedy unless the owner had had the foresight to challenge the

28  ordinance when it was enacted, possibly years or even decades before it was used against the

1 property." Travis, 33 Cal. 4th at 770. Based on that reasoning, Judge Drozd further held in this

2 action:

> Admittedly, this logic appears to primarily concern "as-applied" constitutional challenges, as opposed to facial challenges. Here plaintiff has brought both facial and as-applied challenges to the zoning ordinance at issue, meaning that plaintiff's complaint alleges that the zoning ordinance is unconstitutional on its face as well as in how it applies to plaintiff's individual members. (Doc. No. 1 at ¶ 17.) The court recognizes that plaintiff has failed to cite any authority for the proposition advanced in support of its opposition to the pending motion that § 65009 does not apply to constitutional claims. (See Doc. No. 12 at 3.) But, by the same token, neither has defendant cited to any persuasive authority for the proposition that § 65009 *would* apply to all constitutional claims brought pursuant to § 1983, as opposed to the two-year personal injury statute of limitations referenced above. Evidently, the law with respect to § 65009's application to constitutional challenges—both facial and as-applied—is murky. Fortunately, the court need not resolve that issue because here plaintiff's claims are time-barred regardless of which statute of limitations applies since plaintiff filed its complaint in this action well over two-years after the zoning ordinance's enactment. Rather than add further confusion to § 65009's applicability, the court will dismiss this action based on the two-year statute of limitations, without deciding how or if the 90-day statute of limitations under § 65009 is applicable here.

16 (ECF No. 18 at 5.) Thus, the Court did not previously decide the precise issue as it was not

17 determinative.

18      Like the previous order on dismissal, the Court finds it need not make a definitive

19 determination whether the lesser 90-day period under applies, or the two-year period applies, as

20 the "claims are time-barred regardless of which statute of limitations applies." (Id.) Nonetheless, if

21 a determination is helpful or necessary to consideration of this findings and recommendations, the

22 Court finds greater support for the application of the two-year statute of limitations.

23      The U.S. Supreme Court has held that all Section 1983 claims should borrow a

24 limitations period from the state's personal injury statute of limitations, no matter the type of

25 claim or whether a more analogous limitations period is available. Wilson v. Garcia, 471 U.S.

26 261, 279 (1985) ("The characterization of all § 1983 actions as involving claims for personal

27 injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve

28 the federal interests vindicated by § 1983."); Jones, 393 F.3d at 927 ("For actions under 42

1   U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions.");

2   Action Apartment, 509 F.3d at 1026-27 (noting "the *Wilson* limitations period applies to all §

3   1983 claims, regardless of the civil right asserted," and applying to takings claim); Flynt, 940

4   F.3d at 461 ("The Supreme Court has never limited the *application* of a statute-of-limitations

5   period to as-applied challenges [and] [i]nstead, it has construed 42 U.S.C. § 1988 broadly 'as a

6   directive to select, in each State, the one most appropriate statute of limitations for *all* § 1983

7   claims.' " (quoting Wilson v. Garcia, 471 U.S. 261 (1985)); Colony Cove, 640 F.3d at 956

8   (applying personal injury statute of limitations for Section 1983 takings claim); Hacienda Valley,

9   353   F.3d   at   655   ("Taking claims   must   be   brought   under § 1983 .   .   . [and]

10  [t]he statute of limitations for bringing § 1983 claims in California was one year at the time

11  Hacienda's claim accrued."); see also Wal-Mart Stores, Inc. v. City of Turlock, 483 F. Supp. 2d

12  987, 1003 (E.D. Cal. 2006) (applying 2-year limitations period despite "California Government

13  Code Section 66499.37, which provides a ninety-day limitations period for as-applied challenges

14  to denial of development permits."); Architectureart, LLC v. City of San Diego, No. 15-CV-

15  1592-BAS-NLS, 2016 WL 1077124, at *5 (S.D. Cal. Mar. 18, 2016) ("Contrary to the

16  representations of either party, the Court finds a two-year statute of limitations is applicable to

17  the due process claims filed pursuant to 42 U.S.C. § 1983." (citing Action Apartment, 509 F.3d

18  at 1026)).

19         The Court further finds it need not address the parties' arguments concerning as-applied

20  versus facial challenges under California law in depth, as the Court finds Section 1983's statute

21  of limitations to be more appropriate, and the Court again finds Plaintiff's claims fail under the

22  longer 2-year period.[12]   See Flynt, 940 F.3d at 462 (9th Cir. 2019) ("[T]here is no justification to

23

24  _____

    [12]  To summarize, Plaintiff responds that each of its claims present facial and as-applied challenges under both
    federal and state law and requests both legal and equitable relief, for harms that are retrospective, ongoing, and

25  likely to reoccur in the future, and argues the filing deadline set forth in California Government Code § 65009 only
    applies to facial challenges to local zoning ordinances under state law.  Plaintiff argues Section 65009 and like

26  provisions do not apply to any challenge to an ordinance under federal law.  Wal–Mart Stores, 483 F.Supp.2d at
    1003.  Plaintiff also argues the provision does not apply to any as-applied challenge under state law.  Travis, 33

27  Cal.4th at 770-771; 1305 Ingraham, LLC v. City of Los Angeles, 32 Cal. App. 5th 1253, 1263–65, 244 Cal. Rptr. 3d
    644, 651–52 (2019).  Therefore, Plaintiff submits that an application of section 65009 would not result in the

28  dismissal of the entirety of any of the claims for relief set forth in CAAPG's complaint, as motions to dismiss that
    would only serve to adjudicate one of several theories of recovery are not permissible, and instead, Rule 12(b)

1  treat facial challenges differently for purposes of determining whether a statute of
2  limitations *applies*.") (emphasis in original).

3        Applying the two-year statute of limitations, the Court would find again in conformance
4  with the previous dismissal order that based on the facts alleged in the complaint, Plaintiff's
5  claims accrued on November 16, 2017, the date the challenged ordinance was enacted, there are
6  insufficient facts to support an as-applied challenge, and thus the claims are time-barred. (ECF
7  No. 18 at 6-7.)  Turning to the specific language of the previous order of dismissal relevant to the
8  as-applied challenge, which the Court excerpted more fully above, the District Judge, citing to
9  Levald,[13] and despite the fact it appeared "clear that none of plaintiff's claims accrued within any
10 arguably applicable statute of limitations, suggesting that any amended complaint would prove
11 futile," granted leave to amend, "in an abundance of caution . . . in part because of the potential
12 that plaintiff could allege an as-applied substantive due process challenge."  (ECF No. 18 at 7.)
13 Judge Drozd emphasized that Plaintiff had "alleged no facts suggesting such a claim can be
14 stated which would be timely filed within the two-year limitations period," that allegations of
15 enforcement would "almost certainly be necessary to support an as-applied claim that accrued
16 within the statute of limitations," that "[w]ithout allegations that plaintiff's members were in fact
17 penalized under the ordinance, the only possible injury to plaintiff or its members stems from the

18 ───────────────────────────

19 motions must result in the dismissal of at least one entire cause of action.  See Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013).
20        Defendant replies that the FAC only asserts facial challenges, despite Plaintiff calling them as-applied. (Reply 2.)  Defendant argues Plaintiff misinterprets County of Sonoma, which found only a facial challenge was asserted.  See Cnty. of Sonoma v. Superior Ct., 190 Cal. App. 4th 1312, 1324, 118 Cal. Rptr. 3d 915, 924 (2010)
21 ("In this case, the trial court determined the Cooperative's only valid challenge was facial in nature.").  Defendant argues Plaintiff's reliance on Wal-Mart is misplaced, as the court did not consider Section 65009, and further
22 submits that, assuming the Court continues to apply California Code of Civil Procedure 335.1, argues the Court should reject the conclusory allegations at FAC ¶ 9, as not sufficiently alleging any enforcement action to allege an
23 as-applied challenge, as Plaintiff doesn't identify any property owner, and Plaintiff's opposition did not adequately address this argument.  (Reply 3-4.)

24 [13]  In Levald, after finding the facial challenged barred, as to an applied challenge, while the Ninth Circuit concluded
25 the plaintiff had not met a separate requirement for ripeness, it left open the possibility of maintaining an as-applied challenge if the separate ripeness requirement were later satisfied.  Levald, 998 F.2d at 689 ("Despite Levald's
26 failure to articulate clearly the basis for its as-applied challenge, we will assume arguendo for purposes of this appeal that the complaint can be construed to state an as-applied claim.").  The Ninth Circuit stated "if Levald
27 cannot obtain relief through the state procedures available to it, Levald will have the right to a federal determination of whether the ordinance, as applied to it, 'unjustly imposes a burden on [Levald] that should be compensated by the
28 government, rather than remain[ing] disproportionately concentrated on a few persons."  Id. at 690 (citations and internal quotations omitted).

1    ordinance's enactment," and noted Plaintiff did not directly address the Defendant's highlighting

2    that the Ordinance had not yet been enforced.  (Id. at 6-7.)

3           Again, the FAC now alleges that:

4               CAAPG's Stanislaus County membership includes persons who
                have become subject to the challenged ordinance since September
5               9, 2018, persons who have desisted [from] their protected activities
                within that same time period, as well as those who currently are in
6               violation of the law due to their present and continuing
                disobedience of said ordinance and its ongoing enforcement since
7               it was enacted.  This action was filed less than two years after a
                CAAPG member became subject to its enforcement, less than two
8               years after CAAPG members were harmed by the ordinance, and
                also less than two years since the ordinance's continued
9               enforcement. These claims are therefore timely despite the 2017
                enactment date of the subject ordinance.
10

11   (FAC ¶ 9.)

12          The Court finds these generalized statements do not equate to a substantive difference

13   from the allegations contained in the initial complaint, to the extent that it would address the

14   District Judge's findings regarding a lack of sufficient allegations.  The Court finds these alleged

15   harms contained in paragraph 9 do not demonstrate injury to the alluded to property or properties

16   beyond that which occurred at the time of enactment, and thus there are insufficient allegations

17   to state an as-applied challenge.

18          Taking the plain language of the Ninth Circuit's description of the difference between as-

19   applied and facial challenges, the Court finds Defendant appears correct that the complaint is

20   insufficient in that it fails to allege a particular impact of a government action on a specific piece

21   of property, through an enforcement action or otherwise.  See, e.g., Ventura Mobilehome, 371

22   F.3d at 1051 ("A facial challenge involves 'a claim that the mere enactment of a statute

23   constitutes a taking,' while an as-applied challenge involves 'a claim that the particular impact of

24   a government action on a specific piece of property requires the payment of just compensation.'

25   " (quoting Levald, 998 F.2d at 686)).  The Court finds the Ninth Circuit's definition necessarily

26   means a distinction between the "*mere*" enactment of a statute and " a government action," apart

27   from the additional requirement of an allegation that a "specific piece of property" was impacted

28   by government action.  Id. (emphasis added).   Plaintiff has not provided a convincing argument

1  concerning the lack of a specific alleged enforcement action.  See PDR Network, LLC v. Carlton

2  & Harris Chiropractic, Inc., 204 L. Ed. 2d 433, 139 S. Ct. 2051, 2060 (2019) ("But Abbott

3  Labs did not eliminate as-applied review in [administrative law] enforcement actions . . .  doing

4  so would have thwarted a key aim of the decision, which was to expand the opportunities for

5  judicial review by allowing both facial, pre-enforcement challenges and as-applied challenges to

6  agency action.") (alteration added) (emphasis in original) (Kavanaugh, J., concurring).

7  　　　　Accordingly, the Court recommends granting Defendant's motion to dismiss as

8  Plaintiff's first amended complaint fails to allege sufficient facts to state any as-applied cause of

9  action accrued between September 9, 2018, and September 9, 2020.  The Court recommends

10  granting leave to amend only to the extent that Plaintiff can allege the Ordinance has actually

11  been enforced against a particular property, or at least a description of the impact of the

12  Ordinance as applied to a specific property or member of CAAPG.[14]

13  　　　　**C.      Defendant's Motion to Dismiss for Lack of Standing**

14  　　　　Defendant moves to dismiss for lack of standing.  (Mot. 8-9.)  The Court recommends

15  denying Defendant's motion.

16  　　　　1.      The Parties' Arguments

17  　　　　Defendant argues Plaintiff lacks standing in that: (1) Plaintiff does not claim any direct

18  injury to itself as an organization and thus cannot establish traditional direct standing; and (2)

19  Plaintiff lacks standing to bring suit on behalf of its members as it fails to allege that a member

20  of its organization suffers or suffered an injury-in-fact that is traceable to the Defendant and

21  likely to be redressed by a favorable decision.  (Mot. 8-9.)  Defendant proffers that Plaintiff only

22  generally alleges the Ordinance "infringes on the rights of its constituent members . . ." without

23  naming any specific member that has suffered an alleged injury.  (Mot. 8.)[15]  Defendant

---

24  [14]  The Court does not make a finding as to whether an as-applied challenge must necessarily name or identify the
25  property owner, as the Court finds in the following section such identification is not strictly necessary at least for
   associational standing purposes.  In either regard, Plaintiff's allegations as pled do not make it plausible that any
26  property has had an enforcement action taken against it.

27  [15]  Defendant's motion incorrectly quotes the FAC here, although in substance is similar, in that the FAC actually
   states: "Facially and as applied, the ordinances also interfere with the constitutionally protected property interests of
28  CAAPG's constituent members in Stanislaus County and those similarly situated."  (FAC at 6:15-17, ¶ 18(b).)

1    emphasizes that not only does Plaintiff fail to identify a single member that has been injured, but

2    Plaintiff does not allege any member owns real property that is actually subject to the Ordinance

3    at issue, other than in conclusory terms.  (Mot. 8.)  Defendant submits that Plaintiff must identify

4    by name and address at least one member who owns property one acre or more in size and

5    located within either the R-A (Rural Residential) zoning district or A-2 (General Agriculture)

6    zoning district, in order to sufficiently allege a member is subject to the Ordinance.

7            Plaintiff responds Defendant glosses over allegations in the complaint.  Plaintiff

8    highlights the FAC states CAAPG brings this action on behalf of its constituent members who

9    reside in Stanislaus County and are impacted by the subject ordinance (FAC ¶ 8), and therefore

10   contends it has Article III standing to pursue the claims for relief on their behalf.  Plaintiff argues

11   individual members would have standing in their own right under Article III if they have

12   suffered an "injury in fact" that is concrete and particularized, actual and imminent, not

13   conjectural or hypothetical, is fairly traceable to the challenged action of the defendant, and it is

14   likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision,

15   Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  (Opp'n 10.)  While Defendant

16   contends Plaintiff must name particular members to demonstrate standing, Plaintiff responds this

17   argument has been addressed and disposed of in the Ninth Circuit.  Nat'l Council of La Raza v.

18   Cegavske, 800 F.3d 1032, 1041 (9th Cir. 2015).  Thus, Plaintiff contends under this precedent,

19   because Defendant is already on notice that the asserted claims are concrete and not speculative,

20   it is unnecessary under the law of this Circuit to identify any specific members in the complaint,

21   and such is a matter to address in discovery, where appropriate protective orders can be put in

22   place.  (Opp'n 11.)

23           Defendant replies that Plaintiff reads La Raza too broadly, or is referring to *dicta* in that

24   opinion, as in that case the court already found organizational standing, which requires an

25   organization establish frustration and diversion:  Smith v. Pac. Properties & Dev. Corp., 358 F.3d

26   1097, 1105 (9th Cir. 2004) ("In *Fair Housing,* we interpreted *Havens* to stand for the proposition

27   that an organization may satisfy the Article III requirement of injury in fact if it can demonstrate:

28   (1) frustration of its organizational mission; and (2) diversion of its resources to combat the

1  particular housing discrimination in question." (citing Fair Hous. of Marin v. Combs, 285 F.3d
2  899, 905 (9th Cir. 2002))).   Defendant argues that instead, Plaintiff invokes representational
3  standing to bring a complaint on behalf of members, however, "an association has standing to
4  bring suit on behalf of its members when: (a) its members would otherwise have standing to sue
5  in their own right; (b) the interests it seeks to protect are germane to the organization's purpose;
6  and (c) neither the claim asserted nor the relief requested requires the participation of individual
7  members in the lawsuit."   Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 343,
8  (1977).   In that regard, Defendant maintains that both types require sufficient allegations of
9  injury in fact, but Plaintiff's claim fails because it does not have any allegations of a specific
10 property address within the applicable zone, nor allegations of specific dates of enforcement.
11 (Reply 4.)

12          2.          The Court Recommends Denying Defendant's Motion to Dismiss

13         The parties both cite to Hunt as providing an appropriate framework for associational
14 standing.  Hunt, 432 U.S. at 343 ("(a) its members would otherwise have standing to sue in their
15 own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c)
16 neither the claim asserted nor the relief requested requires the participation of individual
17 members in the lawsuit.").  The Court finds La Raza is most instructive as to the contours of the
18 associational standing requirements in relation to the Defendant's reliance on Summers v. Earth
19 Island Inst., 555 U.S. 488 (2009).

20         In Summers, the majority considered the dissent's proffered "hitherto unheard-of-test for
21 organizational standing," described as: "whether, accepting the organization's self-description of
22 the activities of its members, there is a statistical probability that some of those members are
23 threatened with concrete injury . . .  for example, the Sierra Club asserts in its pleadings that it
24 has more than '700,000 members nationwide, including thousands of members in California'
25 who 'use and enjoy the Sequoia National Forest,' . . . it is probable (according to the dissent) that
26 some (unidentified) members have planned to  visit some (unidentified) small parcels affected by
27 the Forest Service's procedures and will suffer (unidentified) concrete harm as a result."
28 Summers, 555 U.S. at 497–98.  The Supreme Court held that "[t]his novel approach to the law of

organizational standing would make a mockery of our prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm." Id. at 498-99 ("A major problem with the dissent's approach is that it accepts the organizations' self-descriptions of their membership, on the simple ground that 'no one denies' them . . . [b]ut it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.").

In La Raza, the Ninth Circuit rejected the notion that Summers stands for an absolute rule requiring an injured member of an organization to always be specifically identified to establish Article III standing for the organization:

> The complaint also alleges that members of the two NAACP chapters suffered injury as a result of Nevada's failure to comply with Section 7. Citing Summers v. Earth Island Institute, 555 U.S. 488, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009), the district judge held that the chapters' members "must be specifically identified" in order for the chapters to satisfy Article III standing. We are not convinced that Summers, an environmental case brought under the National Environmental Policy Act, stands for the proposition that an injured member of an organization must always be specifically identified in order to establish Article III standing for the organization. The Summers Court refused to find standing based only on speculation that unidentified members would be injured by a proposed action of the National Forest Service. Id. at 498–99, 129 S.Ct. 1142. Where it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury, we see no purpose to be served by requiring an organization to identify by name the member or members injured.
>
> However, even if Summers and other cases are read to require that an organization always identify by name individual members who have been or will be injured in order to satisfy Article III, the district judge erred in dismissing the complaint without granting leave to amend.

La Raza, 800 F.3d at 1041. Although Defendant argues Plaintiff interprets La Raza too broadly, or is referring to dicta in the opinion as the court already found direct organizational standing, even accepting that as true, the Ninth Circuit's language is directly applicable to the language in Summers as relied on by Defendant, and the cases discussed below show courts in the Ninth Circuit consider the Summers and La Raza standards in addition to analyzing direct standing for

1    the organization under the frustration and diversion standards.[16]  However, the <u>Bradley</u> court is

2    in accord with Defendant's position as to the reach of the <u>La Raza</u> holding in relation to first

3    party versus third party organizational standing:  <u>See</u> <u>Bradley v. T-Mobile US, Inc.</u>, No. 17-CV-

4    07232-BLF, 2020 WL 1233924, at *11 (N.D. Cal. Mar. 13, 2020) ("Plaintiffs are incorrect.  The

5    cited case refers to the pleading standard for *first-party standing*, not third-party standing on

6    behalf of an organization's members.").  <u>Bradley</u> is the only case the Court could locate that

7    expressly confined the holding of <u>La Raza</u> as such.

8         However, the Court cannot logically or reasonably address the Defendant's arguments

9    and reliance on <u>Summers</u> without adhering to the Ninth Circuit's language in <u>La Raza</u> that

10   directly spoke to the <u>Summers</u>' stated requirements that Defendant relies on.  Thus, despite the

11   holding of <u>Summers</u>, the Ninth Circuit has held that "[w]here it is relatively clear, rather than

12   merely speculative, that one or more members have been or will be adversely affected by a

13   defendant's action, and where the defendant need not know the identity of a particular member to

14   understand and respond to an organization's claim of injury, we see no purpose to be served by

15   requiring an organization to identify by name the member or members injured."  <u>La Raza</u>, 800

16   F.3d at 1041.  Admittedly, the language of <u>Summers</u> is strong.  <u>Summers</u>, 555 U.S. at 498–99,

17   ("This requirement of naming the affected members has never been dispensed with in light of

18   statistical probabilities, but only where *all* the members of the organization are affected by the

19   challenged activity.").  Nonetheless, the Ninth Circuit's addressment of <u>Summers</u> is direct.  <u>La

20   Raza</u>, 800 F.3d at 1041 (rejecting a reading of <u>Summers</u> that would "require that an organization

21   always identify by name individual members who have been or will be injured in order to satisfy

22   Article III.").  The Court finds it helpful to turns to further caselaw that has considered both <u>La

23   Raza</u> and <u>Summers</u>.

24        While acknowledging <u>La Raza</u>, in <u>Animal Legal Defense Fund</u>, the Northern District of

25   California found the <u>Summers</u> rule applicable.  There, the allegations were more akin to those in

26   _____
     [16] For example, in <u>Animal Legal Defense Fund</u>, the court first examined <u>Summers</u> and <u>La Raza</u>, before analyzing

27   direct standing.  <u>Animal Legal Def. Fund</u>, 2020 WL 6802838, at *5.  There, the court found the organization did not
     establish direct standing, as it did not allege that it had been forced to divert any resources from its core

28   organizational functions.  <u>Id.</u>  The Court does not find Plaintiff has established direct standing here are there are no
     allegations of diversion of resources.

1   Summers, involving general allegations of enjoying natural areas.  2020 WL 6802838, at *4

2   ("ALDF alleges that its members frequent natural areas for the purposes of observing threatened

3   and endangered species and other recreational and professional pursuits . . . While ALDF claims

4   that its members derive recreational, aesthetic, and conservation benefits and enjoyment from the

5   proper treatment and conservation of threatened and endangered species . . . the Complaint fails

6   to show that at least one *identified* member [has] suffered or would suffer harm.") (citations and

7   quotation marks omitted) (alteration and emphasis in original).  In a similar opinion and analysis

8   issued the same date, the court rejected similar generalized allegations of enjoying environmental

9   resources.   Ctr. for Biological Diversity v. Bernhardt, No. 19-CV-05206-JST, 2020 WL

10   4188091, at *4 (N.D. Cal. May 18, 2020) ("Conservation Group Plaintiffs allege that 'their

11   members use threatened and endangered species and their critical habitat located in California

12   and other states nationwide for recreational, scientific, and aesthetic purposes.' ").  In both cases,

13   the court rejected declarations submitted in opposition as improper when adjudicating a facial

14   challenge, and granted leave to amend.  See id. at *4; Animal Legal Def. Fund, 2020 WL

15   6802838, at *6.

16        In League of Women Voters, the court relied on La Raza to conclude that the identity of

17   particular members was not required for fair notice of the claims and to establish plausibility at

18   the pleadings stage.  League of Women Voters of California v. Kelly, No. 17-CV-02665-LB,

19   2017 WL 3670786, at *7–8 (N.D. Cal. Aug. 25, 2017) ("In [La Raza] the Ninth Circuit

20   addressed whether an organization must identify its members by name to establish associational

21   standing . . . [and] held that the organizations had standing even though they did not identify

22   their members by name . . . [a] plaintiff does not need to plead its evidence; it needs only to

23   allege a claim plausibly [and] [t]he court cannot discern why—at the pleadings stage—the

24   identity of particular members is required for fair notice of the claims.").  However, even so, the

25   court did not find the allegations made clear rather than speculative that members were injured,

26   particularly as the most foundational allegation in the complaint was alleged only on "belief" that

27   members were injured.  Id. ("That said, the plaintiffs allege only their 'belief' that members were

28   injured [and] [w]hile other allegations state more concretely that members were injured, those

1  allegations are grounded on the predicate allegation that the plaintiffs believe that they have

2  members who were injured."). The court granted leave to amend. Id.

3      In Garcia, the court found La Raza clarified the standing requirements vis-à-vis

4  Summers. The court noted the "Supreme Court has stated that the 'requirement of naming

5  affected members' can only be dispensed with 'where *all* the members of the organization are

6  affected by the challenged activity.'" Garcia v. City of Los Angeles, No. CV 19-06182-DSF-

7  PLA, 2020 WL 2128667, at *6 (C.D. Cal. Feb. 15, 2020) (quoting Summers, 555 U.S. at 498-

8  99). The court considered the "Ninth Circuit has confirmed that naming members is required at

9  the summary judgment stage." Id. (citing Associated Gen. Contractors of Am., San Diego

10  Chapter, Inc. v. California Dep't of Transp., 713 F.3d 1187, 1194–95 (9th Cir. 2013)).[17]  The

11  Garcia court found that in La Raza, the Ninth Circuit had "indicated, however, that Summers

12  does not require organizations to name allegedly injured members in all circumstances." Garcia,

13  2020 WL 2128667, at *6. The court concluded naming individual members may not be

14  necessary at the motion to dismiss stage where the pleading satisfies the requirements of La

15  Raza. Id.

16      In Associated General Contractors, cited in Garcia, there the Ninth Circuit distinguished

17  Northeastern Florida as pertaining to uncontested allegations of harm establishing standing,

18  versus the failure to do so when contested at summary judgment. Associated Gen. Contractors

19  of Am., San Diego Chapter, 713 F.3d at 1194–95 (citing Ne. Fla. Chapter of Associated Gen.

20  Contractors of Am. v. City of Jacksonville, Fla., 508 U.S. 656, 668, 113 S. Ct. 2297, 2304, 124

21  L. Ed. 2d 586 (1993)). The pre-La Raza case also discussed Summers. 713 F.3d at 1194-95

22  ("The requirement of naming the affected members has never been dispensed with in light of

23  statistical probabilities . . . [m]oreover, on summary judgment, AGC was required to submit

24

---

25  [17]  The Court notes the posture in Summers as follows: "The District Court granted a preliminary injunction against
    the Burnt Ridge salvage-timber sale . . . thereafter, the parties settled their dispute over the Burnt Ridge Project and

26  the District Court concluded that the Burnt Ridge timber sale is not at issue in this case . . . [t]he Government argued
    that, with the Burnt Ridge dispute settled, and with no other project before the court in which respondents were

27  threatened with injury in fact, respondents lacked standing to challenge the regulations; and that absent a concrete
    dispute over a particular project a challenge to the regulations would not be ripe [and the] District Court proceeded,
    however, to adjudicate the merits of Earth Island's challenges . . . invalidat[ing] five of the regulations . . .  and

28  entered a nationwide injunction against their application." Summers, 555 U.S. at 491–92.

competent evidence, not mere allegations, to demonstrate that at least one of its members had standing . . . AGC does not identify any affected members by name nor has it submitted declarations by any of its members attesting to harm they have suffered or will suffer under Caltrans' program.").    Of note, the Ninth Circuit observed that plaintiffs' reliance on Northeastern Florida was misplaced, as there the complaint was verified and uncontested.  Id. at 1195 ("In *Northeastern Florida,* standing was upheld based on uncontested allegations in a verified complaint that the plaintiff's members suffered the requisite harm . . . [b]ecause the allegations were not challenged, the Court reasoned that it had to accept them as true [but] [i]n contrast, Caltrans disputes AGC's allegations and undermined any evidentiary support that AGC offered to substantiate those allegations [and] [a]n unverified complaint cannot form the basis of evidence considered at summary judgment.").

Here, while the complaint is not verified and the allegations are disputed, the pleadings are at the motion to dismiss stage, not the summary judgment stage.  Thus, there are multiple factors that could sway the standing analysis in light of the Ninth Circuit's and Supreme Court's language.

Turning back to the facts of Garcia, the challenged ordinance "regulate[d] the storage of personal property in public areas [and its] stated purpose [was] to 'balance the needs of the residents and public at large to access clean and sanitary public areas ... with the needs of the individuals, who have no other alternatives for the storage of personal property, to retain access to a limited amount of personal property in public areas.' "  Garcia, 2020 WL 2128667, at *1. Applying La Raza to the allegations generally pertaining to the homeless community in Los Angeles, the court concluded that "this is a case where it is 'relatively clear' that one or more of KFA's unhoused members have been and will be adversely affected by the challenged provisions of the Ordinance and the City need not know the identity of the allegedly harmed members to understand and respond to the Supplemental FAC [and] KFA need not specifically name its allegedly harmed members at this stage."  Id. at *6.  The Garcia court further found that: "Nor must KFA allege all of the specific details listed by the City (time and date of each incident, the reason the property was allegedly taken by the City, etc.) . . . to sufficiently allege that its

unhoused members would have standing at this stage." Id.

In Fish Nw., while noting under La Raza identification of members may not be required in all cases, the court found only general elements were alleged along with a generalized statement that the organization's unidentified members "care deeply" about the recovery and conservation of the subject salmon population. Fish Nw. v. Thom, No. C21-570 TSZ, 2021 WL 4744768, at *4 (W.D. Wash. Oct. 12, 2021) ("FNW concludes that its members have standing to sue, but FNW did not identify any of its members  . . . [and] [w]hile identification of members may not be required in all cases, FNW's injuries are not 'relatively clear' . . . so additional facts are required to establish the requisite injury for standing in this case . . . [as] Defendants, and the Court, are left to connect the dots . . . and speculate as to the nature of any members' injuries [as] [a] generalized statement that FNW's unidentified members 'care deeply' about the recovery and conservation of Puget Sound salmon is insufficient to establish injury without additional facts."). While the complaint averred to some economic damages, the court found that establishing standing was further confounded as the allegations were insufficiently clear to determine who caused the injuries. Id. ("FNW alludes to its members' economic interest in the salmon . . . FNW provides no facts to support that Federal Defendants' actions harmed the members' businesses [and] [d]etermining who harmed the members' business is further complicated by the fact that FNW's sixty-day notice expressed grievance over fishing allotments between the Treaty Tribes and the non-treaty fishers . . . the Court is unable to determine whether Federal Defendants, the Treaty Tribes, or the State caused the members' unspecified injuries."). The court granted leave to amend, except as to the causes of action that the court found futile because of mootness, or where the court found it lacked jurisdiction. Id. at *5-8.

In Humane Society, the court explained the interplay between Summers and La Raza, distilling it down the view that in Summers, "the plaintiffs lacked standing because their alleged harm was not tied to any specific person," but finding that "requiring an organizational plaintiff to tie its injury to specific, identifiable members is not equivalent to requiring that plaintiff to name those members at the pleading stage." Humane Soc'y of the United States v. United States Dep't of Agric., No. 20-03258 AB (GJSX), 2021 WL 1593243, at *5–6 (C.D. Cal. Mar. 26,

1   2021).  This Court views <u>Humane Society</u> as somewhat presenting more than Plaintiff CAAPG,

2   in that there appears to be greater individualized allegations than the complaint here, but the

3   organization still did not name specific individuals.  The court found the information that was

4   provided was sufficient under <u>La Raza</u>, and discussed the different requirements at the

5   "successive stages of the litigation":

> Notably, here, Plaintiffs do not rest their claim of standing on probabilities and statistics. Rather, the FAC alleges particular facts about 10 individuals going to how Defendants' conduct allegedly injures them. Furthermore, as demonstrated by their thorough memoranda, Defendants were able to fully and substantively contest the Plaintiffs' standing despite not knowing the individuals' names. Although Plaintiffs have not alleged these individuals' names, they are plainly "identified," albeit as-yet-unnamed, members, and individualized allegations are made as to each of them. This is sufficient under *Cegavske.*

> Defendants argue that the Court will not be able to determine whether a geographic nexus exists between the claimed injury and the location of the impacts (as is required in environmental cases) unless the plaintiffs are named. But the FAC *pleads* a geographic nexus for these individuals, and simply naming the individuals reveals nothing about their location. Certainly (and as Plaintiffs' affirmed at oral argument), the members would be named in the course of discovery for Defendants to test the FAC's allegations. A plaintiff need only establish standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This case is at the pleading stage, so "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). The individual's names add nothing to the standing analysis at this stage, so the Court rejects Defendants' argument under *Summers*. The Court now proceeds to its standing analysis.

22   <u>Humane Soc'y</u>, 2021 WL 1593243, at *5–6.  The court found the association "Farm Sanctuary"

23   did not establish standing on its own behalf as it did not show frustration of mission or diversion

24   of resources.  <u>Id.</u> at *6.  The court found the plaintiffs did establish associational standing.  <u>Id.</u>

25   ("First, Plaintiffs allege that APHIS violated NEPA by its EA and FONSI, and its failure to

26   prepare an EIS . . . the violation of procedural rules, a cognizable injury . . . [s]econd, Plaintiffs

27   allege facts showing that NEPA's EIS requirement protects their concrete interests . . . [and]

28   [t]hird, Plaintiffs allege facts showing that is *reasonably* probable that APHIS's action will

threaten their concrete interests.").

The Court finds the level of connection in Plaintiff CAAPG's allegations as between the individual members and the organization allegations somewhat closer to that in San Diego County Lodging Association:

> . . . SDCLA asserts that the Ordinance unlawfully interferes with at-will employment. SDCLA alleges that "several of [its] members operate hotels with over 200 guest rooms in San Diego and have terminated workers who would qualify as 'laid-off employees' under the Ordinance." (ECF No. 1 ¶ 5). SDCLA alleges that many of its members "hired workers under an at-will employment agreement ... [and] assumed that ... they could lay off those workers without granting them a possible cause of action." (*Id.* ¶ 21 (emphasis omitted)). SDCLA further alleges that its members "have a statutory right to terminate an employee for any non-protected reason." (*Id.* ¶ 45). SDCLA alleges that the Ordinance denies its members the right to terminate employees at-will because "absent good cause for the termination, they must re-hire anyone previously fired" or face civil liability. (*Id.* ¶ 22).

San Diego Cnty. Lodging Ass'n v. City of San Diego, No. 20-CV-2151-WQH-MDD, 2021 WL 5176477, at *4 (S.D. Cal. July 8, 2021).   There, the court found the allegations "plausibly support an inference that members of SDCLA covered by the Ordinance hired employees at-will and will be adversely affected by the requirements of the Ordinance [and] an inference that members of SDCLA would have standing to assert the first and fifth claims in their own right and that Defendants do not need to know the identity of a particular member to understand and respond to the claims of injury related to at-will employment."  Id.

First, the Court is in agreement with the above courts that find relevant differences in the successive stages of litigation, specifically between motions to dismiss and motions for summary judgment. Humane Soc'y, 2021 WL 1593243, at *5–6 ("This case is at the pleading stage, so general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim . . . [and] [t]he individual's names add nothing to the standing analysis at this stage, so the Court rejects Defendants' argument under *Summers*."); Garcia, 2020 WL 2128667, at *6; League of Women Voters, 2017 WL 3670786, at *7–8 ("A plaintiff does not need to plead its evidence; it needs only to allege a claim plausibly [and] [t]he court cannot

1 discern why—at the pleadings stage—the identity of particular members is required for fair
2 notice of the claims.").

3      Turning to the allegations here, before the Ordinance was passed, Plaintiff alleges
4 "CAAPG's members and those with similar interests were able to own, breed and enjoy their
5 roosters without any government interference, so long as they did so legally and responsibly."
6 (FAC ¶ 12.)  Plaintiff alleges that "CAAPG's Stanislaus County membership includes persons
7 who have become subject to the challenged ordinance since September 9, 2018, persons who
8 have desisted form [sic] their protected activities within that same time period, as well as those
9 who currently are in violation of the law due to their present and continuing disobedience of said
10 ordinance and its ongoing enforcement since it was enacted."  (FAC ¶ 9.)

11      The Court finds that for this type of case, at the pleadings stage, with allegations that
12 landowners in a county are in fact subject to and current in violation of the ordinance, is not like
13 the Summers and other environmental type of case that involved more speculative allegations
14 that a member could or does enjoy or experience the environment or animals subject to the
15 challenged law.  The Court concludes CAAPG's allegations, pertaining to property owners in
16 Stanislaus County, does rise above the generalized allegations in environmental cases that allege
17 things such as enjoyment of the area or wildlife.  See Summers, 555 U.S. at 497–98; Animal
18 Legal Def. Fund, 2020 WL 6802838, at *4; Ctr. for Biological Diversity, 2020 WL 4188091, at
19 *4; Fish Nw. v. Thom, 2021 WL 4744768, at *4.

20      Although the Court does not believe the allegations are sufficient to state an as-applied
21 challenge as to a specific piece of property in order to survive a challenge concerning the statute
22 of limitations, as found above, the Court finds the allegations more akin to those the courts above
23 found sufficient without identification of specific individual members.  Garcia, 2020 WL
24 2128667, at *1; San Diego Cnty. Lodging, 2021 WL 5176477, at *4; see also California
25 Trucking Ass'n v. Becerra, 438 F. Supp. 3d 1139, 1145 (S.D. Cal. 2020) ("CTA has plausibly
26 alleged that many of its members have been injured, including by pleading that many of its
27 members regularly contract with individual independent contractors, that its members did so
28 lawfully prior to *Dynamex*, and that CTA's members can no longer do so . . . . in the light most

36

1   favorable to CTA, the association has pled sufficient facts to show how its members are injured
2   [and] [m]oreover, at the current pleadings stage, the Court is not persuaded that the identity of
3   specific members is somehow required for fair notice of CTA's claims."); W. States Trucking
4   Ass'n v. Becerra, No. 519CV02447CASKKX, 2020 WL 2542062, at *5 (C.D. Cal. May 18,
5   2020) ("[A]ccording to WSTA, if the challenged provisions are enforced in the way WSTA
6   reads them, they would require WSTA members to reclassify any subcontractors they hire as
7   employees at great expense to their operations [and] [t]hese allegations, accepted to be true,
8   make it 'relatively clear' that any construction trucking service provider would be adversely
9   affected by the challenged provisions, and there is little (if any) additional material
10  understanding to be gained by forcing WSTA to divulge added information identifying its
11  members at this juncture."). The allegations rise above the allegations based on "belief" in
12  League of Women Voters. 2017 WL 3670786, at *8.

13       The Court concludes that the allegations in this particular case make it "relatively clear,
14  rather than merely speculative, that one or more members have been or will be adversely affected
15  by a defendant's action, and where the defendant need not know the identity of a particular
16  member to understand and respond to an organization's claim of injury, we see no purpose to be
17  served by requiring an organization to identify by name the member or members injured." La
18  Raza, 800 F.3d at 1041. The Court further finds it is plausible that members of CAAPG have
19  suffered a concrete injury and Defendant does not need to know the identity of a particular
20  member to understand and respond to the claims of injury and to respond to the challenges
21  mounted to the Ordinance. Even if the Court were to grant Defendant's motion to dismiss, it
22  would properly be with leave to amend.

23       Accordingly, the Court recommends Defendant's motion to dismiss for lack of
24  association or organization standing be denied.

25       **D.      Defendant's Motion to Dismiss the Procedural Due Process Cause of Action**

26       Defendant moves to dismiss Plaintiff's third cause of action for procedural due process
27  violation. (Mot. 9-10.) The Court recommends granting Defendant's motion to dismiss the
28  procedural due process claim without leave to amend.

1         1.     <u>The Parties' Arguments</u>

2        Defendant submits that Plaintiff's third cause of action for procedural due process

3 violation fails as a matter of law because Plaintiff fails to identify a clear property right that was

4 subject to some due process right.   <u>Erdelyi v. O'Brien</u>, 680 F.2d 61, 63 (9th Cir. 1982)

5 ("Property interests protected by the Due Process Clause of the Fourteenth Amendment do not

6 arise whenever a person has only 'an abstract need or desire for,' or 'unilateral expectation of,' a

7 benefit . . . [but] [r]ather, they arise from 'legitimate claim(s) of entitlement ... defined by

8 existing rules or understandings that stem from an independent source such as state law.' "

9 (quoting <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972))).   Defendant argues procedural

10 due process requires a party affected by government action receive the opportunity to be heard at

11 a meaningful time and manner, but does not require individualized notice with large scale

12 actions, such as here.   <u>See</u> <u>Hotel & Motel Ass'n of Oakland v. City of Oakland</u>, 344 F.3d 959,

13 969 (9th Cir. 2003) ("[N]otwithstanding an action's outward appearance as a legislative act,

14 greater procedural rights may attach where only a few persons are targeted or affected and the

15 state's action exceptionally affect[s] them on an individual basis . . . [and] [b]y contrast, our

16 cases have determined also that governmental decisions which affect large areas and are not

17 directed at one or a few individuals do not give rise to the constitutional procedural due process

18 requirements of individualized notice and hearing; general notice as provided by law is

19 sufficient.") (internal quotations and citations omitted).

20        Here, Defendant contends the FAC does not provide any actual facts suggesting

21 Plaintiff's members have a property or liberty interest protected by the Constitution to use

22 property to own, raise, and/or breed roosters; and further, CAAPG does not and cannot allege the

23 Stanislaus County officials failed to comply with state law in enacting the Ordinance, nor that the

24 County failed to give proper notice, as to the contrary, Plaintiff submits as Exhibit A "Findings

25 and Actions Require for Project Approval," which included a public hearing on the matter, and a

26 six month grace period for implementation after approval.   (<u>See</u> ECF No. 1, Ex. A.)   Defendant

27 also contends that according to CAAPG's Exhibit E, a public hearing did occur on September 7,

28 2017, which provided those in opposition a meaningful opportunity to be heard as to comply

with due process requirements.  (ECF No. 1, Ex. E.)[18]

In opposition,[19] Plaintiff directs the Court to Paragraph 17(c) of the FAC:

> Facially and as applied, the ordinances also violate the procedural due process rights of CAAPG's constituent members and those similarly situated. The Due Process Clause of the Fourteenth Amendment protects individuals against deprivations of "life, liberty, or property." "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations and quotation marks omitted). Like property rights, liberty interests can be defined by state law. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483–484 (1995). Once a state creates a liberty interest, it cannot take it away without due process. *See Swarthout v. Cooke*, 131 S.Ct. 859, 862 (2011). A state official's failure to comply with state law that gives rise to a liberty or property interest may amount to a procedural (rather than substantive) due process violation, which can be vindicated under 42 U.S.C. § 1983. *See Carlo v. City of Chino,* 105 F.3d 493, 497–500 (9th Cir. 1997).

(FAC ¶ 17(c).)  Plaintiff responds that Defendant's arguments ignore the applicable law and disregard the Ordinance retroactively abrogated the rights of preexisting owners.  Plaintiff contends that procedural due process claims present two inquiries.  First "whether there exists a liberty or property interest which has been interfered with by the State." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).  Second, "whether the procedures attendant upon that deprivation were constitutionally sufficient." Id.  Plaintiff contends undue interference with rights allowed under state law satisfies the first prong.  See Humphries v. County of Los Angeles, 554 F.3d 1170, 1185, 1188 (9th Cir. 2009).  Plaintiff suggests California state law clearly permits rooster and other property ownership (see Cal. Const., art. I § 1), and it is beyond peradventure that the subject ordinances interfere with those rights.  Plaintiff further submits that where property rights are retroactively voided, the existence of post-deprivation remedies is largely irrelevant.  See Zinermon v. Burch, 494 U.S. 113, 136-139 (1990) (adequate post-

---

[18]  As the Court found above, the Court grants Defendant's requests for judicial notice of the documents attached the initially filed complaint, except for where specifically challenged as to certain factual findings contained therein, as discussed below.

[19]  To be clear, it appears that Plaintiff responds to Defendant's motion to dismiss Section (V)(D), (Mot. 9), in the opposition Argument, Section VIII, (Opp'n  14-15).

1  deprivation state law remedies only bar a procedural due process claim for random and

2  unauthorized conduct that leads to the deprivation of a protected liberty or property interest).

3  (Opp'n 15.)

4       Defendant replies that Plaintiff fails to cite any authority for its interpretation of the

5  California Constitution, which does not mention roosters.  (Reply 5.)  Additionally, Defendant

6  contends Plaintiff broadly interprets the Ordinance as affecting "ownership" of roosters, which it

7  does not, but rather only the housing of roosters on certain zoned property; it merely regulates

8  land use, and allegedly affected members of CAARP are free to house roosters on property not

9  affected or regulated by the Ordinance.

10       2.    The Court Finds in Favor of Defendant as to Challenge to Third Cause of Action

11       "A procedural due process claim has two elements: deprivation of a constitutionally

12  protected liberty or property interest and denial of adequate procedural protection."  Krainski v.

13  Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., 616 F.3d 963, 970 (9th Cir.

14  2010); see also Shanks v. Dressel, 540 F.3d 1082, 1090 (9th Cir. 2008); Shelley v. Cnty. of San

15  Joaquin, 996 F. Supp. 2d 921, 926 (E.D. Cal. 2014).  Property interests "are created and their

16  dimensions are defined by existing rules or understandings that stem from an independent source

17  such as state law."  Roth, 408 U.S. at 577.  "Thus, a federal court deciding whether a 'claim of

18  entitlement' constitutes a constitutionally protected 'property interest' does 'not craft substantive

19  law regarding [a state's] property interests.  Rather, it ma[kes] its best prediction as to what the

20  [state's] Supreme Court would say about the matter, given the opportunity.' "  Shelley, 996 F.

21  Supp. 2d at 926 (quoting Waeschle v. Dragovic, 687 F.3d 292, 295 (6th Cir.2012)); see also

22  Buckles v. King Cnty., 191 F.3d 1127, 1137 (9th Cir. 1999) ("The Buckles' procedural due

23  process claim is further lacking because they have not shown that they have a 'legitimate claim

24  of entitlement' to the zoning for commercial use created by 'an independent source such as state

25  law.' " (quoting Roth, 408 U.S. at 577)).

26       The Court first turns to the question of whether Plaintiff alleges a constitutionally

27  protected property interest.  The California Constitution, Article 1, Section 1, provides: "All

28  people are by nature free and independent and have inalienable rights.  Among these are

40

enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  Defendant is correct that Plaintiff has not provided the Court any specific authority concerning its interpretation of the California Constitution, which does not mention roosters.  However, Defendant has not convinced the Court roosters would not be considered a protected property interest under state law.  Although no seizure of the roosters has occurred, the Court finds adequate support to predict, Shelley, 996 F. Supp. 2d at 926, that the California Supreme Court would support finding a protected property interest in the roosters.

The Court finds the discussion in Phillips to be instructive in laying out the contours of protected property interests under California law, specifically as to ownership of animals:

> Procedural due process imposes constraints on governmental decisions depriving individuals of liberty or property interests. (Mathews v. Eldridge (1976) 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18; Isbell v. County of Sonoma (1978) 21 Cal.3d 61, 68, 145 Cal.Rptr. 368, 577 P.2d 188.) Principles of due process apply to all takings of non de minimus property, including such disparate objects as farm animals (Carrera, supra, 63 Cal.App.3d 721, 724, 134 Cal.Rptr. 14), a motorcycle engine (Hughes v. Neth (1978) 80 Cal.App.3d 952, 959, 146 Cal.Rptr. 37), a tortoise (Jett v. Municipal Court (1986) 177 Cal.App.3d 664, 668, 223 Cal.Rptr. 111) or a newsrack (Kash Enterprises, Inc. v. City of Los Angeles (1977) 19 Cal.3d 294, 308, 138 Cal.Rptr. 53, 562 P.2d 1302). We think that dogs, being personal property and having economic value, are also included within its reach. (Civ.Code, § 655; Pen.Code, § 491; Johnson v. McConnell (1889) 80 Cal. 545, 548–549, 22 P. 219; People v. Sadowski (1984) 155 Cal.App.3d 332, 335, 202 Cal.Rptr. 201; Roos v. Loeser (1919) 41 Cal.App. 782, 785, 183 P. 204.) Aside from their economic value, however, "... it is equally true that there are no other domestic animals to which the owner or his family can become more strongly attached, or the loss of which will be more keenly felt" (Johnson, supra, at p. 549, 22 P. 219), unless the animal is a cat, to which many people have equally strong attachments, but will reluctantly agree that the word "owner" is inappropriate. (See also Eliot, T.S., Old Possum's Book of Practical Cats (1939).)
>
> Carrera v. Bertaini, supra, 63 Cal.App.3d 721, 134 Cal.Rptr. 14 concerned an ordinance and penal code section permitting the impoundment and sale of neglected farm animals. The court declared the ordinance invalid because it failed to provide reasonable notice and a hearing either before or after seizure: "As a matter of basic fairness, to avoid the incurrence of unnecessary expenses appellant was entitled to a hearing before her animals were seized or, if the circumstances justified a seizure without notice and a hearing, she was entitled to a prompt hearing after the

1

2

3

> animals were seized." (*Carrera,* 63 Cal.App.3d 721, 729, 134 Cal.Rptr. 14. See also *Anderson v. George* (1977) 100 W.Va. 76, 233 S.E.2d 407, 409 invalidating seizure, without notice or hearing, of abandoned or neglected animals.)

4   Phillips v. San Luis Obispo Cnty. Dep't etc. Regul., 183 Cal. App. 3d 372, 376–77 (Ct. App.

5   1986); see also Patrick v. Rivera, No. 2:11-CV-00113-EJL, 2013 WL 2945118, at *9 (D. Idaho

6   June 13, 2013) ("Here, the Patricks can likely satisfy the first and second prongs of the claim as

7   the loss of their animals deprives them as owners of a property interest that may be taken from

8   them only in accordance with the Due Process Clause and the animals were taken by agents of

9   the state."); Jackson v. Placer Cnty., No. CIV S0579FCDKJM, 2005 WL 1366486, at *5 (E.D.

10  Cal.                            May                             27,                            2005)

11  ("[I]n *Carrera v. Bertaini,* 63 Cal.App.3d 721, 134 Cal.Rptr. 14 (1976) where the court held that

12  absent circumstances justifying summary seizure of a plaintiff's farm animals on grounds of

13  animal cruelty and neglect, the plaintiff was entitled to notice and a pre-seizure hearing.").

14       These cases involve the procedural due process protections for actual seizure of the

15  animals, a form of property.  There has been no seizure in this case, nor challenge to a law

16  involving the process of seizure.  Nonetheless, the Court finds finds adequate support to predict,

17  Shelley, 996 F. Supp. 2d at 926, that the California Supreme Court would support finding a

18  protected property interest in the roosters.

19       This action involves amendment of zoning ordinances.  (FAC ¶12-15.)  To be clear

20  however, "[u]nder California law, there is no right to any particular or anticipated zoning."

21  Tyson v. City of Sunnyvale, 920 F. Supp. 1054, 1060–61 (N.D. Cal. 1996) ("As a matter of law,

22  plaintiffs did not have a vested right to a particular zoning designation, and accordingly, their

23  procedural due process claim necessarily fails.") (citations omitted); Avco Cmty. Devs., Inc. v.

24  S. Coast Reg'l Com., 17 Cal. 3d 785, 796 (1976) ("It is beyond question that a landowner has no

25  vested right in existing or anticipated zoning.").  The Court finds the Ninth Circuit's discussion

26  in Harris helpful concerning large scale versus targeted zoning changes:

27

28

> We find the present case to be more analogous to *Londoner* than *Bi–Metallic.* The County's consideration of the vast area contemplated by the General Plan Amendment certainly

42

affected a large number of people and would not ordinarily give rise to constitutional procedural due process requirements. Within the County's amendment process, however, the County specifically targeted Harris' property for a zoning change after notice had been published for the General Plan Amendment. The district court made no factual findings on this issue, but the record also supports the conclusion that the County undeniably knew the use Harris was making of his property when it acted to change the zoning on his land.[1] Under the facts of this case, the County's decision to alter its proposed General Plan Amendment specifically to rezone Harris' land constituted a decision which was distinct from, rather than a part of, approval of the General Plan Amendment. This decision, in contrast to approval of the General Plan Amendment, concerned a relatively small number of persons (Harris and the immediately adjacent landowner) rather than the entire population of the West Coachella Valley. As the California Supreme Court has expressly cautioned, "land use planning decisions less extensive than general rezoning c[an] not be insulated from notice and hearing requirements by application of the 'legislative act' doctrine." *Horn v. County of Ventura,* 24 Cal.3d 605, 613, 596 P.2d 1134, 1138, 156 Cal.Rptr. 718, 722 (1979).

Harris v. Cnty. of Riverside, 904 F.2d 497, 501 (9th Cir. 1990).  Plaintiff makes no allegations that the ordinance specifically targeted a property or limited number of properties, and the Court finds this counsels in favor of dismissal.  See Id.; Christensen v. Yolo Cnty. Bd. of Sup'rs, 995 F.2d 161, 166 (9th Cir. 1993) (noting same, and holding "[t]he Agreement covers a large area of land and it is not specifically targeted at a small number of property owners.  Therefore, constitutional procedural due process requirements are not applicable to the adoption of the Agreement.").

Plaintiff does not dispute Defendant's reference to the exhibits attached to Plaintiff's initial complaint that correspond to notice, a public hearing, and grace period, and makes no allegations that insufficient notice was provided before the Ordinance was adopted.  The Court finds this weighs in favor of granting Defendant's motion to dismiss.  See Christensen, 995 F.2d 161, 166 (9th Cir. 1993) ("Furthermore, exhibits presented by defendants demonstrate that notice was published and posted regarding the defendants' intent to adopt the Agreement at specific meetings, and also that notice was published and a public hearing was held on the redevelopment plan prior to its adoption."); Samson v. City of Bainbridge Island, 683 F.3d 1051, 1061 (9th Cir. 2012) (when an action is legislative, "due process is satisfied when the legislative body performs

1    its responsibilities in the normal manner prescribed by law." (quoting <u>Halverson v. Skagit Cnty.</u>,

2    42 F.3d 1257, 1260 (9th Cir. 1994))); <u>Blocktree Properties, LLC v. Pub. Util. Dist. No. 2 of

3    Grant Cnty. Washington</u>, 447 F. Supp. 3d 1030, 1040 (E.D. Wash. 2020) ("Procedural due

4    process does not apply to legislative acts . . . a plaintiff must show that the deprivation occurred

5    as a result of an adjudicatory process rather than a legislative process.") (citations omitted), <u>aff'd

6    sub nom. Cytline, LLC v. Pub. Util. Dist. No. 2 of Grant Cnty., Washington</u>, 849 F. App'x 656

7    (9th Cir. 2021); <u>Akshar Glob. Invs. Corp. v. City of Los Angeles</u>, 817 F. App'x 301, 305 (9th

8    Cir. 2020) ("Appellants' allegation that they were deprived of their Fourteenth Amendment right

9    to procedural due process fails as a matter of law. Appellants had the opportunity (and took

10    advantage of the opportunity) to appear at the initial revocation hearing before the Zoning

11    Administrator.").

12        Accordingly, the Court recommends Defendant's motion to dismiss Plaintiff's procedural

13    due process claim should be granted.   <u>See Samson</u>, 683 F.3d at 1061 ("The City Council's

14    enactment of the various moratorium ordinances were lawful legislative acts, because the

15    ordinances applied generally to all owners of shoreline property on Bainbridge Island . . .

16    [n]othing in the record suggests that the City Council adopted the various ordinances in an

17    unlawful manner, and the Samsons do not assert that Bainbridge failed to provide adequate

18    notice of or forums for public hearings.").   Given the above law and undisputed facts, the Court

19    does not find the deficiency can be cured and recommends denying leave to replead a procedural

20    due process claim.   <u>See</u> Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

21    justice so requires."); <u>Schreiber</u>, 806 F.2d 1393, 1401; <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th

22    Cir. 2000).

23        **E.**      **Defendant's Motion to Dismiss Plaintiff's Regulatory Taking Claim**

24        Defendant moves to dismiss Plaintiff's claim for regulatory taking. (Mot. 10.) The Court

25    recommends granting Defendant's motion to dismiss.   The Court recommends granting

26    Defendant's motion to dismiss with leave to amend.

27        1.     <u>The Parties' Arguments</u>

28        Defendant proffers that insofar as Plaintiff is not alleging a land use exaction or physical

invasion of real property, in order to proceed, Plaintiff must allege the Ordinance completely

deprives an owner of all economically beneficial use of real property, or meets the elements

under Penn Central.  As the Supreme Court explained:

> *Penn Central* identified several factors—including the regulation's economic impact on the claimant, the extent to which it interferes with distinct investment-backed expectations, and the character of the government action—that are particularly significant in determining whether a regulation effects a taking. Because the three inquiries reflected in *Loretto, Lucas*, and *Penn Central* all aim to identify regulatory actions that are functionally equivalent to a direct appropriation of or ouster from private property, each of them focuses upon the severity of the burden that government imposes upon property rights.

Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 528–29 (2005).  In addition to being untimely,

Defendant argues Plaintiff does not allege any members have lost any economical use of their

land, let alone all economically viable use of their land.  See Hotel & Motel Ass'n of Oakland v.

City of Oakland, 344 F.3d 959, 965 (9th Cir. 2003) ("[T]he contours have been established: a

land use regulation does not constitute a taking if the regulation does not deny a landowner all

economically viable use of the property and if the regulation substantially advances a legitimate

government interest." (quoting Buckles v. King County, 191 F.3d 1127, 1140 (9th Cir. 1999))).

Rather, Defendant contends Plaintiff only makes conclusory allegations Defendant "has

effectuated a regulatory taking as to property rights of CAAPG's constituent members and those

similarly situated by eliminating their rights to own, possess and breed roosters on their own

property without providing any recourse or compensation."  (FAC ¶ 23.)[20]  Likewise, Defendant

argues Plaintiff does not allege the first two elements of Penn Central, specifically failing to

allege there has been some economic impact by the Ordinance to real property, and to what

extent the Ordinance interfered with investment-backed expectations.  (Mot. 11.)

Plaintiff responds Defendant is trying to rewrite the complaint in arguing Plaintiff failed to

allege for purposes of its regulatory taking claim that its constituent members have lost all

economical uses of their land, emphasizing that Plaintiff is not alleging a regulatory taking of land,

---

[20]  The Court notes that this paragraph of the complaint begins with the phrase "[a]s alleged in detail above, Stanislaus County has effected a regulatory taking . . . ."  (FAC ¶ 23.)  Further, the preceding paragraph realleges and incorporates by reference all foregoing paragraphs.  (FAC ¶ 22.)  Thus, the Court does not only consider the Defendant's focus on that part of the paragraph of the complaint.

but of roosters.  With respect to those roosters, Plaintiff highlights it is alleging the County's Ordinance absolutely prohibited them, even retroactively, and provided no basis for compensation (FAC ¶¶ 12-16).  Plaintiff contends the result is that the only people who can lawfully possess roosters in Stanislaus County are commercial farmers.  (FAC ¶ 1.)  Plaintiff argues the law supports their position as the Takings Clause provides protection against the appropriation of property whether personal or real, Horne v. Department of Agriculture, 576 U.S. 350, 362 (2015) ("Horne"), and submits that a *per se* taking occurs where the legislation's result is that after enactment, the only permissible use an owner's property is to transfer it to a third party.  Brown v. Legal Found. of Wash., 538 U.S. 216, 235 (2003) ("Brown").

Defendant replies Plaintiff not only wrongly characterizes the Ordinance, but also overstates both of these cases, or neither are applicable to this case.  (Reply 5-6.)  Defendant argues the Court must reject Plaintiff's characterization as a *per se* taking of personal property as no reasonable reading of the Ordinance states the County is taking roosters for its own use, and that a particularly zoned property cannot be used to house, inter alia, roosters, does not affect a taking of the personal property.  (Reply 6.)

2.    The Court Recommends Granting Defendant's Motion to Dismiss

"When the government, rather than appropriating private property for itself or a third party, instead imposes regulations that restrict an owner's ability to use his own property," the Supreme "has generally applied the flexible test" from Penn Central.  Cedar Point Nursery v. Hassid, 210 L. Ed. 2d 369, 141 S. Ct. 2063, 2071–72 (2021).  Thus, in analyzing a claim for a regulatory taking, courts evaluate three factors "of particular significance," (1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action."  Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124, 98 S. Ct. 2646, 2659, 57 L. Ed. 2d 631 (1978); DoorDash, Inc. v. City & Cnty. of San Francisco, No. 21-CV-05502-EMC, 2022 WL 867254, at *18 (N.D. Cal. Mar. 23, 2022).  These factors are "ad hoc, factual inquiries into the circumstances of each particular case."  Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211, 224, 106 S. Ct. 1018, 1026, 89 L. Ed. 2d 166 (1986).

1    Plaintiff submits <u>Horne</u> overruled a Ninth Circuit decision holding that personal property

2 was entitled to lesser protection. In <u>Horne</u>, the Supreme Court first described the contours of the

3 "longstanding distinction" between direct acquisitions of property and regulatory takings, and the

4 "established rule of treating direct appropriations of real and personal property alike":

5
6
7
8
9
10

> The Ninth Circuit based its distinction between real and personal property on this Court's discussion in *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), a case involving extensive limitations on the use of shorefront property. 750 F.3d, at 1139–1141. *Lucas* recognized that while an owner of personal property "ought to be aware of the possibility that new regulation might even render his property economically worthless," such an "implied limitation" was not reasonable in the case of land. 505 U.S., at 1027–1028, 112 S.Ct. 2886.

11
12
13
14
15
16
17

> *Lucas,* however, was about regulatory takings, not direct appropriations. Whatever *Lucas* had to say about reasonable expectations with regard to regulations, people still do not expect their property, real or personal, to be actually occupied or taken away. Our cases have stressed the "longstanding distinction" between government acquisitions of property and regulations. *Tahoe–Sierra Preservation Council,* 535 U.S., at 323, 122 S.Ct. 1465. The different treatment of real and personal property in a regulatory case suggested by *Lucas* did not alter the established rule of treating direct appropriations of real and personal property alike. See 535 U.S., at 323, 122 S.Ct. 1465. (It is "inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa" (footnote omitted)).

18 <u>Horne</u>, 576 U.S. at 360-61. The Supreme Court then applied the rule to the circumstances of the

19 case, which involved the "actual taking of possession and control" of the raisins as a direct

20 appropriation, and thus the raisin growers lost the entire "bundle" of property rights in the

21 appropriated raisins:

22
23
24
25
26
27

> The reserve requirement imposed by the Raisin Committee is a clear physical taking. Actual raisins are transferred from the growers to the Government. Title to the raisins passes to the Raisin Committee. App. to Pet. for Cert. 179a; Tr. of Oral Arg. 31. The Committee's raisins must be physically segregated from free-tonnage raisins. 7 CFR § 989.66(b)(2). Reserve raisins are sometimes left on the premises of handlers, but they are held "for the account" of the Government. § 989.66(a). The Committee disposes of what become its raisins as it wishes, to promote the purposes of the raisin marketing order.

28

> Raisin growers subject to the reserve requirement thus lose the entire "bundle" of property rights in the appropriated raisins—"the

47

1
2
3
4
5
6
7
8

> rights to possess, use and dispose of" them, *Loretto,* 458 U.S., at 435, 102 S.Ct. 3164 (internal quotation marks omitted)—with the exception of the speculative hope that some residual proceeds may be left when the Government is done with the raisins and has deducted the expenses of implementing all aspects of the marketing order. The Government's "actual taking of possession and control" of the reserve raisins gives rise to a taking as clearly "as if the Government held full title and ownership," *id.,* at 431, 102 S.Ct. 3164 (internal quotation marks omitted), as it essentially does. The Government's formal demand that the Hornes turn over a percentage of their raisin crop without charge, for the Government's control and use, is "of such a unique character that it is a taking without regard to other factors that a court might ordinarily examine." *Id.,* at 432, 102 S.Ct. 3164.

9
10
11

*Horne,* 576 U.S. at 361-62.  The Supreme Court then clarified that although similar impacts may result from a prohibition on the sale of the raisins versus a direct taking, government actors must still comply with a method that is allowed under the Constitution:

12
13
14
15
16
17
18
19
20

> The Government thinks it "strange" and the dissent "baffling" that the Hornes object to the reserve requirement, when they nonetheless concede that "the government may prohibit the sale of raisins without effecting a per se taking." Brief for Respondent 35; *post,* at 2443 (SOTOMAYOR, J., dissenting). But that distinction flows naturally from the settled difference in our takings jurisprudence between appropriation and regulation. A physical taking of raisins and a regulatory limit on production may have the same economic impact on a grower. The Constitution, however, is concerned with means as well as ends. The Government has broad powers, but the means it uses to achieve its ends must be "consist[ent] with the letter and spirit of the constitution." *McCulloch v. Maryland,* 4 Wheat. 316, 421, 4 L.Ed. 579 (1819). As Justice Holmes noted, "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way." *Pennsylvania Coal,* 260 U.S., at 416, 43 S.Ct. 158.

21

*Horne,* 576 U.S. at 362.

22
23
24
25
26
27
28

   While Plaintiff argues <u>Horne</u> supports their position as the Takings Clause provides protection against the appropriation of property whether personal or real, the Court does not find <u>Horne</u> to be analogous to the facts in this case, as there was no physical or direct appropriation of the property here, the roosters.  Further, the Supreme Court also distinguished that the "Raisin growers subject to the reserve requirement thus los[t] the entire 'bundle' of property rights in the appropriated raisins—'the rights to possess, use and dispose of' them."  <u>Horne,</u> 576 U.S. at 361-62.  As Defendant argues, owners are free to house roosters on property not affected or regulated

1  by the Ordinance, and therefore here, the entire "bundle" of property rights in the roosters is not

2  taken like in a direct appropriation.  Thus, the Court  does not believe the principles underlying the

3  Horne decision extend to these circumstances.  See also Cedar Point Nursery, 141 S. Ct. at 2074

4  ("The physical appropriation by the government of the raisins in that case was a *per se* taking,

5  even if a regulatory limit with the same economic impact would not have been.").

6      Plaintiff further argues, relying on Brown, that a *per se* taking occurs where the legislation's

7  result is that after enactment, the only permissible use of an owner's property is to transfer it to a

8  third party.  First, practically speaking, the Court agrees with Defendant that the restriction of

9  housing roosters on subject properties does not equate to the only permissible use of the property

10 being transfer to a third party.  The Court finds the reasoning underlying Horne, and the facts of

11 Brown further support the Court's conclusion.  In Brown, the interest earned on IOLTA accounts

12 was private property that was transferred without compensation to a public foundation.

13 Importantly, the interest was in fact transferred away from the owner; thus the interest was

14 "taken for a public use" without compensation.  The Court also considered that the initial

15 requirement of transfer of principal to the IOLTA was only a transfer, but could be considered

16 the first step in a regulatory taking subject to the Penn Central analysis:

> In their complaint, Brown and Hayes separately challenge (1) the
> requirement that their funds must be placed in an IOLTA account
> (Count III) and (2) the later transfers to the Foundation of whatever
> interest is thereafter earned (Count II). The former is merely a
> transfer of principal and therefore does not effect a confiscation of
> any interest. Conceivably it could be viewed as the first step in a
> "regulatory taking" which should be analyzed under the factors set
> forth in our opinion in *Penn Central.* Under such an analysis,
> however, it is clear that there would be no taking because the
> transaction had no adverse economic impact on petitioners and did
> not interfere with any investment-backed expectation. See 438
> U.S., at 124, 98 S.Ct. 2646.
>
> Even the dissenters in the Court of Appeals did not disagree with
> the proposition that *Penn Central* forecloses the conclusion that
> there was a regulatory taking effected by the Washington IOLTA
> program. In their view, however, the proper focus was on the
> second step, the transfer of interest from the IOLTA account to the
> Foundation. It was this step that the dissenters likened to the kind
> of "*per se*" taking that occurred in *Loretto v. Teleprompter
> Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d
> 868 (1982).

We agree that a *per se* approach is more consistent with the reasoning in our *Phillips* opinion than *Penn Central*'s ad hoc analysis. As was made clear in *Phillips,* the interest earned in the IOLTA accounts "is the 'private property' of the owner of the principal." 524 U.S., at 172, 118 S.Ct. 1925. If this is so, the transfer of the interest to the Foundation here seems more akin to the occupation of a small amount of rooftop space in *Loretto*.

We therefore assume that Brown and Hayes retained the beneficial ownership of at least a portion of their escrow deposits until the funds were disbursed at the closings, that those funds generated some interest in the IOLTA accounts, and that their interest was taken for a public use when it was ultimately turned over to the Foundation.

Brown, 538 U.S. at 234–35.  Thus, the Supreme Court found the actual transfer of the private property in the form of the interest earned on the IOLTA account was more akin to a physical occupation of physical property, as the interest was in fact taken for public use.  Id.

The Court does not find Brown or Horne supportive of Plaintiff's position, and finds the Ordinance is not a *per se* taking of the roosters.  Brown, 538 U.S. at 234–35; Horne, 576 U.S. at 361-62; Cedar Point Nursery v. Hassid, 210 L. Ed. 2d 369, 141 S. Ct. 2063, 2072 (2021) ("The essential question is . . . whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property [and] [w]henever a regulation results in a physical appropriation of property, a *per se* taking has occurred, and *Penn Central* has no place."); DoorDash, 2022 WL 867254, at *17 ("A regulatory taking is different from the other Takings claim that the Supreme Court has recognized—where the government carries out 'a physical appropriation of property,' which is 'a *per se* taking.' " (quoting Cedar Point, 141 S. Ct. at 2072)); Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California, 508 U.S. 602, 643, 113 S. Ct. 2264, 2290, 124 L. Ed. 2d 539 (1993) ("We reject Concrete Pipe's contention that the appropriate analytical framework is the one employed in our cases dealing with permanent physical occupation or destruction of economically beneficial use of real property.").

The Court also does not find the regulation has deprived an owner of all economically beneficial use of the property (whether considering the land or the roosters).  Bridge Aina Le'a, LLC v. Land Use Comm'n, 950 F.3d 610, 625–26 (9th Cir. 2020) ("Government regulations that

1  constitute such a taking are typically those that require land to be left substantially in its natural
2  state . . .[t]his is a 'relatively narrow' and relatively rare taking category . . . confined to the
3  'extraordinary circumstance when *no* productive or economically beneficial use of land is
4  permitted.") (citations omitted), cert. denied sub nom. Bridge Aina Le'a, LLC v. Hawaii Land
5  Use Comm'n, 209 L. Ed. 2d 163, 141 S. Ct. 731 (2021).  Based on such, and having concluded
6  there is no physical appropriation of property and thus no *per se* taking, the Court now turns to
7  the Penn Central factors.

8       The Court is to consider the Penn Central factors of: (1) the regulation's economic impact
9  on the claimant, (2) the extent to which the regulation interferes with distinct investment-backed
10  expectations, and (3) the character of the government action.  Id. ("Only if the reversion fell
11  short of a total taking was application of *Penn Central* necessary."); Colony Cove, 888 F.3d at
12  450; Penn Central, 438 U.S. at 124; S. California Rental Hous. Ass'n v. Cnty. of San Diego, 550
13  F. Supp. 3d 853, 864–65 (S.D. Cal. 2021) ("In analyzing a regulatory taking, a court considers
14  the three *Penn Central* factors.").  Defendant argues Plaintiff does not allege the first two
15  elements of Penn Central, specifically failing to allege there has been some economic impact by
16  the Ordinance to real property, and to what extent the Ordinance interfered with investment-
17  backed expectations.  (Mot. 11.)

18       "In considering the economic impact of an alleged taking, we 'compare the value that has
19  been taken from the property with the value that remains in the property.' "  Colony Cove, 888
20  F.3d at 450 (quoting Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 497, 107
21  S.Ct. 1232, 94 L.Ed.2d 472 (1987)); S. California Rental, 550 F. Supp. 3d at 864 (same);
22  Honchariw v. Cnty. of Stanislaus, No. 1:21-CV-00801-SKO, 2022 WL 16748699, at *6 (E.D.
23  Cal. Nov. 7, 2022) (same).  "There is 'no litmus test' in undertaking this 'value comparison.' "
24  Honchariw, 2022 WL 16748699, at *6; see also Concrete Pipe, 508 U.S. at 645 (noting "our
25  cases have long established that mere diminution in the value of property, however serious, is
26  insufficient to demonstrate a taking," and citing cases with an approximately 75% diminution,
27  and a 92.5% diminution) (citations omitted); Colony Cove, 888 F.3d at 450 (same); DoorDash,
28  2022 WL 867254, at *18 (same).

1    The Court finds no allegations of economic impact that would support this factor

2  weighing in favor of Plaintiff, and Plaintiff has not directed the Court to any.  See Honchariw,

3  2022 WL 16748699, at *7–8 ("Plaintiff makes virtually no attempt to specify how much the

4  value of his property has been reduced."); Evans Creek, LLC v. City of Reno, No. 21-16620,

5  2022 WL 14955145, at *1 (9th Cir. Oct. 26, 2022) ("As pleaded, the complaint lacks any

6  information about the value of the property when the 2020 Application was submitted or its

7  value after the 2020 Application was denied . . . it is not possible for this Court to determine

8  what the economic impact to the property is, even taking the allegations in the complaint as

9  true."); S. California Rental, 550 F. Supp. 3d at 864 ("It is difficult to calculate the impact that

10  the Ordinance has on the value of Plaintiff's members' property interests, particularly because

11  Plaintiff has not included any facts related to a diminution of value of their property.").

12    "With regard to the second factor, the Court uses an objective analysis to evaluate

13  interference with the reasonable investment-backed expectations of the property owner" with the

14  "focus [] on interference with reasonable expectations." Honchariw, 2022 WL 16748699, at *6

15  (quoting Bridge Aina Leʻa, 950 F.3d at 633); Colony Cove, 888 F.3d at 452 ("To form the basis

16  for a taking claim, a purported distinct investment-backed expectation must be objectively

17  reasonable.").   Thus, " '[d]istinct investment-backed expectations' implies reasonable

18  probability, like expecting rent to be paid, not starry eyed hope of winning the jackpot if the law

19  changes.' " Id. (quoting Guggenheim, 638 F.3d at 1120).  Unilateral expectations or abstract

20  needs "cannot form the basis of a claim that the government has interfered with property rights."

21  Id. (quoting Bridge Aina Leʻa, 950 F.3d at 633-34).  The status of the "regulatory environment at

22  the time of the acquisition of the property," is also a relevant and important consideration in

23  judging reasonable expectations.  Id. (quoting Bridge Aina Leʻa, 950 F.3d at 634).  "[T]hose who

24  do business in the regulated field cannot object if the legislative scheme is buttressed by

25  subsequent amendments to achieve the legislative end." Bridge Aina Leʻa, 950 F.3d at 634

26  (quoting Concrete Pipe, 508 U.S. at 645).

27    The Court finds no allegations of interference with investment-backed expectations that

28  would counsel weighing this factor in favor of Plaintiffs.  Honchariw, 2022 WL 16748699, at

1   *7–8 ("Plaintiff's abstract allegations that his 'distinct investment-backed expectations' were

2   frustrated [] and that he was deprived 'of a critical and anticipated development opportunity' []

3   are insufficient."); S. California Rental, 550 F. Supp. 3d at 864 (noting "[v]arious courts have

4   determined that eviction moratorium regulations enacted in response to COVID-19 do not violate

5   a landlord's investment-backed expectations, finding that the business area of renting residential

6   property is heavily-regulated, therefore landlords could have expected additional ordinances,"

7   but that "[o]ther courts have noted that although landlords understood they were operating in a

8   highly regulated area, they could not have expected the COVID-19 pandemic and its attendant

9   regulations.").

10         The Court concludes that both the first and second Penn Central factors weigh against

11  finding that a regulatory taking has occurred.  Honchariw, 2022 WL 16748699, at *7 ("These

12  conclusory allegations, without more, fall short of setting forth the 'value comparison' necessary

13  to indicate any economic impact of Defendant's conduct on Plaintiff's property or demonstrating

14  interference with any reasonable investment-backed expectations that Plaintiff could have

15  formed regarding his property."); see also Killgore v. City of S. El Monte, No.

16  219CV00442SVWJEM, 2020 WL 4258584, at *5 (C.D. Cal. Apr. 24, 2020), aff'd, 860 F. App'x

17  521 (9th Cir. 2021), and aff'd, 3 F.4th 1186 (9th Cir. 2021).

18         Defendant only focuses arguments concerning the first and second factors.  (See Reply

19  6.)  "The first and second Penn Central factors are the primary factors."  Honchariw, 2022 WL

20  16748699, at *5 (citing Bridge Aina Le'a, 950 F.3d at 630).  The Court notes the nature of the

21  governmental action likely weighs in favor of Defendant as well.  See Lingle, 544 U.S. at 539

22  ("[T]he 'character of the governmental action'—for instance whether it amounts to a physical

23  invasion or instead merely affects property interests through 'some public program adjusting the

24  benefits and burdens of economic life to promote the common good'—may be relevant in

25  discerning whether a taking has occurred." (quoting Penn Central, 438 U.S. at 124)); Diller v.

26  Schenk, No. CIV.A. C-83-20043WAI, 1986 WL 1788, at *31 (N.D. Cal. Feb. 6, 1986)

27  ("the nature of  the government's act  (e.g., was  it  a  physical  invasion  or  merely  a  use

28  restriction).") (emphasis added); Colony Cove, 888 F.3d at 454 (noting Penn Central held a

1   taking "may more readily be found when the interference with property can be characterized as a

2   physical invasion by government than when interference arises from some public program

3   adjusting the benefits and burdens of economic life to promote the common good[,]" finding

4   "[t]he City's rent control ordinance is precisely such a program, striving to 'protect[ ]

5   Homeowners from excessive rent increases and allow[ ] a fair return on investment to the Park

6   Owner[,]" and holding such central purpose of the rent control programs counseled against

7   finding a <u>Penn Central</u> taking.) (citations omitted); <u>Honchariw</u>, 2022 WL 16748699, at *7 ("The

8   Court [in <u>Penn Central</u>] cited zoning laws as classic examples of land-use regulations 'which

9   have been viewed as permissible governmental action even when prohibiting the most beneficial

10  use of the property.' " (quoting <u>Penn Central</u>, 438 U.S. at 125).

11      The Court recommends granting Defendant's motion to dismiss Plaintiff's regulatory

12  taking claim.  The Court recommends granting leave to amend only to the extent Plaintiff can

13  allege in good faith, facts demonstrating the regulation's economic impact, and the extent to

14  which the regulation interferes with distinct investment-backed expectations.[21]

15      **F.   Defendant's Motion to Dismiss Plaintiff's As-Applied Claim for Regulatory Taking as Unripe**

16

17      Defendant moves to dismiss Plaintiff's as-applied regulatory takings claim as not ripe.

18  (Mot. 11-12.)  The Court recommends granting Defendant's motion.

19      1.   <u>The Parties' Arguments</u>

20      Defendant argues the FAC makes clear Defendant is not alleged to have engaged in any

21  enforcement action on the Ordinance; does not allege any of Plaintiff's constituent members

22  have been subject to any active form of code enforcement by the County, save in a passive way;

---

23  [21] In <u>Killgore</u>, the court first dismissed the regulatory taking claim as the complaint did not allege "any diminution
24  in property value, or that Plaintiff's property has been rendered economically unviable." <u>Killgore v. City of S. El
    Monte</u>, No. 219CV00442SVWJEM, 2020 WL 4258584, at *5 (C.D. Cal. Apr. 24, 2020), <u>aff'd</u>, 860 F. App'x 521
    (9th Cir. 2021), and <u>aff'd</u>, 3 F.4th 1186 (9th Cir. 2021).  The court found the third amended complaint sufficiently
25  did so when it added factual allegations that the plaintiff had "sustained severe economic damages as a result of the
    closure of LM, including but not limited to over $1,000,000.00 in his prior investment in the business, revenue
26  losses of over $25,000.00 per month since the closure of LM in February of 2019 to date, lease and utility payments
    at the location of LM of over $5,000.00 per month since the closure of LM in February of 2019 to date, and will
27  continue to sustain such losses unless and until LM is reopened.  <u>Id.</u> at *5-6 ("At the pleading stage, these
    allegations suffice to establish Plaintiff's 'distinct investment-backed expectations' with regard to his continued
28  operation of Lavender Massage as a massage parlor.").

1   and there are no allegations any member sought and was denied a variance or other form of

2   application of the Ordinance such that a final decision has been made.  (Mot. 12-13.)  Defendant

3   submits Plaintiff must meaningfully request and be denied a variance from the challenged

4   regulation before bringing a regulatory takings claim.  Adam Bros. Farming v. Cnty. of Santa

5   Barbara, 604 F.3d 1142, 1147 (9th Cir. 2010); S. Pac. Transp. Co. v. City of Los Angeles, 922

6   F.2d 498, 503–04 (9th Cir. 1990) ("In applying the 'final determination' requirement, courts

7   have emphasized that local decision-makers must be given an opportunity to review at least one

8   reasonable development proposal before an as-applied challenge to a land use regulation will be

9   considered ripe.").

10      Plaintiff responds that Defendant ignores the plain language of its own amended

11  ordinance, which provides that prior nonconforming uses shall not be permitted to continue

12  (FAC ¶ 14); and that the complaint also alleges the Ordinance absolutely prohibited roosters and

13  did not provide for any compensation (FAC ¶¶ 15, 16).  (Opp'n 12.)  Plaintiff thus argues that

14  where an ordinance renders an activity absolutely illegal and does not permit a variance, one

15  does not need to be sought to establish finality, Vacation Village, Inc. v. Clark County, Nev, 497

16  F.3d 902, 912 (9th Cir. 2007).  Plaintiff proffers that if there is some means of redress, it

17  certainly is not demonstrable from the allegations of the complaint, which at this stage guides the

18  Court's analysis.

19      Defendant replies that Plaintiff offers no authority the County would interpret the

20  Ordinance in the manner argued, and no court has stated that "prior nonconforming uses shall not

21  be permitted to continue" may be reasonably interpreted to mean no variances will be

22  considered.  (Reply 7.)  Rather, by the plain language, Defendant proffers the language appears

23  to relate to a lack of "grandfathering" non-conforming properties.  Defendant cites Witt for the

24  proposition that such case referred to a grandfather clause as excluding properties that otherwise

25  qualified under an earlier provision of the law.  Witt Home Ranch, Inc. v. Cnty. of Sonoma, 165

26  Cal. App. 4th 543, 557, 81 Cal. Rptr. 3d 123, 134 (2008) ("While one can argue about the exact

27  meaning of the grandfather clause, there is no reasonable argument that its plain meaning is

28  identical to that of the grandfather clause of 1937, because the 1943 language plainly excludes

1   subdivision maps that qualified under that earlier provision.")  Defendant argues this does not

2   make the use of the land "unconditional," and regardless, Plaintiff is not qualified to allege how

3   the government entity charged with implementing the regulations would have determined

4   application of the Ordinance.  (Reply 7.)  Defendant also argues that Plaintiff's reliance on

5   Vacation Village is misplaced, as there the court found the Nevada court had already declared

6   the ordinance unconditional, which allowed for a modified form of ripeness, but nonetheless

7   went on to find a developer had been denied use of particular land, and thus the entity had been

8   given an opportunity to make a decision and did so.

9           2.      The Court Finds in Favor of Defendant and Recommends Granting Dismissal

10          In Pakdel, the Ninth Circuit recently described the previous two-prong ripeness

11  requirements for regulatory takings claims under the Williamson decision, prior to the Supreme

12  Court's clarification of the rule:

> "Constitutional challenges to local land use regulations are not
> considered by federal courts until the posture of the challenges
> makes them 'ripe' for federal adjudication." *S. Pac. Transp. Co. v.*
> *City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990).
> In *Williamson County Regional Planning Commission v. Hamilton*
> *Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d
> 126 (1985), the Supreme Court articulated two independent
> ripeness requirements for regulatory takings claims. First, under
> the finality requirement, a takings claim challenging the
> application of land-use regulations was "not ripe until the
> government entity charged with implementing the regulations
> ha[d] reached a final decision regarding the application of the
> regulations to the property at issue." *Id.* at 186, 105 S.Ct. 3108.
> Second, under the state-litigation requirement, a claim was not ripe
> if the plaintiff "did not seek compensation [for the alleged taking]
> through the procedures the State ha[d] provided for doing
> so." *Id.* at          194,          105          S.Ct.          3108.

23  Pakdel v. City & Cnty. of San Francisco, 952 F.3d 1157, 1163 (9th Cir. 2020), cert. granted,

24  judgment vacated sub nom. Pakdel v. City & Cnty. of San Francisco, California, 210 L. Ed. 2d

25  617, 141 S. Ct. 2226 (2021).  In Adams, cited by Defendant, the Ninth Circuit described a final

26  decision for this first prong of the ripeness rule: "[A] final decision exists when (1) a decision

27  has been made 'about how a plaintiff's own land may be used' and (2) the local land-use board

28  has exercised its judgment regarding a particular use of a specific parcel of land, eliminating the

1  possibility that it may 'soften[ ] the strictures of the general regulations [it] administer[s].' "

2  Adam Bros., 604 F.3d at 1147 (9th Cir. 2010) (quoting Suitum v. Tahoe Reg'l Plan. Agency, 520

3  U.S. 725, 738-39 (1997) (alteration added by quoting source)).

4          In Pakdel, the Supreme Court clarified the strict application of the rule emphasizing it did

5  not require exhaustion of state remedies when the government has reached a conclusive position,

6  and there are no avenues remaining for the government to clarify or change its position.  Pakdel,

7  141 S. Ct. at 2231 ("Whatever policy virtues this doctrine might have, administrative 'exhaustion

8  of state remedies' is not a prerequisite for a takings claim when the government has reached a

9  conclusive position . . . we have indicated that a plaintiff 's failure to properly pursue

10 administrative procedures may render a claim unripe *if* avenues still remain for the government

11 to clarify or change its decision . . . contrary to the Ninth Circuit's view, administrative missteps

12 do not defeat ripeness once the government has adopted its final position.") (emphasis in

13 original); see also Hoffman Bros. Harvesting, Inc. v. Cnty. of San Joaquin, No. 2:20-CV-00660-

14 TLN-AC, 2021 WL 4429465, at *5 (E.D. Cal. Sept. 27, 2021) ("The Supreme Court recently [in

15 Pakdel] . . . rejected the Ninth Circuit's requirement to seek 'an exemption through prescribed

16 [state] procedures' because the plaintiffs had in fact requested exemptions from regulations and

17 been denied [and] further explained . . . 'a plaintiff's failure to properly pursue administrative

18 procedures may render a claim unripe *if* avenues still remain for the government to clarify or

19 change its decision.' " (quoting Pakdel, 141 S. Ct. at 2231)).

20         The Court turns to the parties' arguments concerning Vacation Village.  There the Ninth

21 Circuit relied on the Nevada Supreme Court's finding that the challenged ordinance was an

22 unconditional permanent taking, and physical occupation of the property under the Nevada

23 Constitution.  Vacation Village, 497 F.3d at 912.  The Ninth Circuit applied a modified ripeness

24 approach for physical takings that are unconditional and permanent.  Id. ("For such takings, the

25 ripeness analysis of *Williamson County* applies in a modified form.").  Specifically, "the first

26 requirement, that the government entity reach a final decision regarding the application of the

27 regulations to the property at issue, is 'automatically satisfied at the time of the physical taking'

28 because '[w]here there has been a physical invasion, the taking occurs at once, and nothing the

1   city can do or say after that point will change that fact.' "  Id. (quoting Daniel v. Cnty. of Santa

2   Barbara, 288 F.3d 375, 382 (9th Cir. 2002) (alterations in quoting source)).  The Ninth Circuit

3   thus held that "as to Ordinance 1221, the ripeness doctrine does not require the Landowners to

4   first seek and be denied a variance to satisfy the finality requirement."  Id.

5          On the other hand, the Ninth Circuit applied an unmodified ripeness analysis to the

6   ordinance that did not involve a physical taking.  Id.  To that ordinance, the Ninth Circuit

7   imposed a "meaningful application requirement" that requires that the "local decision-makers

8   must be given an opportunity to review at least one reasonable development proposal before an

9   as applied challenge to a land use regulation will be considered ripe."  Id. (quoting S. Pac.

10  Transp., 922 F.2d at 503).  "This requirement applies 'even in instances where a regulation

11  appeared on its face to be highly restrictive.' "  Id. (finding lower court's determination there was

12  meaningful application was not clearly erroneous).

13         Here, because there is no physical occupation of the property, or considering the personal

14  property in the form of the roosters, no physical seizure of the roosters, the Court finds Plaintiff's

15  reliance on Vacation Village not persuasive as to the allegations in the complaint.  Considering

16  the recent guidance in Pakdel, the Court does not view this as a case where there are *no* avenues

17  remaining for the County of Stanislaus to clarify or change its position, and there is no indication

18  here Plaintiff had in fact requested an exemption at some point, even despite Plaintiff's

19  arguments that previous non-conforming uses would not be allowed.  A restriction on previously

20  allowed non-conforming uses does not necessarily mean the County would be foreclosed from

21  considering exceptions or clarifications to certain uses under the Ordinance as amended, at least

22  in the Court's view, and Plaintiff has not provided any convincing authority in that regard in

23  relation to the recent guidance from Pakdel.  See 141 S. Ct. at 2231 (administrative exhaustion of

24  state remedies not prerequisite when government has reached a conclusive position, however

25  failure to properly pursue administrative procedures may render a claim unripe if avenues still

26  remain for the government to clarify or change its decision); Hoffman Bros., 2021 WL 4429465,

27  at *5.

28         The Court concludes Plaintiff has not satisfied the "meaningful application requirement,"

1  and thus Plaintiff's as-applied claim for regulatory taking is not ripe, and the Court recommends

2  Defendant's motion to dismiss be granted as to the as-applied regulatory taking claim.  See

3  Knick v. Twp. of Scott, Pennsylvania, 204 L. Ed. 2d 558, 139 S. Ct. 2162, 2169 (2019) ("First,

4  the developer still had an opportunity to seek a variance from the appeals board, so any taking

5  was therefore not yet final.")[22]; Ralston v. Cnty. of San Mateo, No. 21-CV-01880-EMC, 2021

6  WL 3810269, at *7–8 (N.D. Cal. Aug. 26, 2021) ("[C]ontrary to Plaintiffs'

7  interpretation, Pakdel does not— indeed it cannot—stand for the proposition that Plaintiffs need

8  not formally apply for a CDP or submit a meaningful development proposal before filing suit

9  [as] [t]he Pakdels applied to be part of San Francisco's conversion program, and there was in

10  effect a final decision applying the conversion rules to them . . . San Francisco issued a 'final

11  decision' only because it had made it clear to the Pakdels that they had to issue the lease or face

12  an enforcement action."), aff'd, No. 21-16489, 2022 WL 16570800 (9th Cir. Nov. 1, 2022);

13  Pakdel, 952 F.3d at 1167 (9th Cir. 2020) ("Allowing a takings claim to proceed when a variance

14  or exemption was not requested at the proper junctures would undermine the purposes of the

15  finality requirement by eliminating local officials' opportunities to exercise discretion and by

16  presenting federal courts with ill-defined controversies."); Hoffman Bros., 2021 WL 4429465, at

17  *5 ("Defendants maintain the zoning change alone is not a final administrative decision for

18  purposes of ripeness even if it renders Plaintiffs' existing operations as nonconforming because

19  Plaintiffs must submit at least one 'meaningful application' or request for relief from the

20  requirements of the new zoning before coming into a federal forum . . .  Plaintiffs' failure to

21  include any allegations of requesting an exemption or any kind of relief from the new zoning

22  requirements does not satisfy the finality requirement of Williamson."); Ralston, 2022 WL

23  16570800, at *1 (9th Cir. Nov. 1, 2022) ("A regulatory takings claim ripens when 'there [is] no

24  question ... about how the regulations at issue apply to the particular land in question.' " (quoting

25  Pakdel, 141 S. Ct. at 2230)); S. Pac. Transp., 922 F.2d at 503 ("The meaningful application

26  ────────────────

   [22]  This prong of the finality requirement was not questioned in Knick.  139 S. Ct. at 2169 ("Knick does not

27  question the validity of this finality requirement, which is not at issue here.").  Knick was cited by the Supreme

   Court in Pakdel, as one of the Court's cases that "indicated that a plaintiff's failure to properly pursue administrative

28  procedures may render a claim unripe if avenues still remain for the government to clarify or change its position."

   Pakdel, 141 S. Ct. at 2231.

requirement is not waived when a zoning ordinance only appears not to permit a reasonable economic return on a piece of property[,] [i]n such cases, property owners are required to seek a reasonable return by applying for such variances as would provide it . . . [and] [t]he term 'variance' is not definitive or talismanic; if other types of permits or actions are available and could provide similar relief, they must be sought.") (citations omitted).

The Court recommends leave to amend be granted only to the extent Plaintiff can plead some form of meaningful application for relief from the zoning law.

### G. Defendant's Motion to Dismiss Plaintiff's Second Cause of Action for Substantive Due Process

Defendant moves to dismiss Plaintiff's second cause of action for a substantive due process violation. (Mot. 12-13.) The Court recommends granting Defendant's motion to dismiss with leave to amend.

#### 1. The Parties' Arguments

Defendant submits that although Plaintiff asserts a separate Fourteenth Amendment claim as a second cause of action, this claim fails as well. Defendant first contends that to the extent a property owner's complaint falls within one of the three basic categories of regulatory action (physical invasion, economic deprivation, Penn Central) then the claim must be analyzed under the Fifth Amendment. See Crown Point Dev., Inc. v. City of Sun Valley, 506 F.3d 851, 855–56 (9th Cir. 2007) ("To the extent a property owner's complaint falls within one of these categories (or some other recognized application of the Takings Clause), *Lewis* suggests that the claim must be analyzed under the Fifth Amendment whether or not it proves successful."); Lingle, 544 U.S. at 528–29. As Plaintiff is alleging a regulatory taking occurred, Defendant argues Plaintiff's claims should be properly analyzed under the textual construction of the Fifth Amendment, and submits Plaintiff's claims fails under the analysis above. Defendant suggests otherwise, in order to allege a 42 U.S.C. § 1983 substantive due process claim, Plaintiff must allege the Ordinance constitutes an arbitrary and capricious act which deprived its members of a protected property interest. Lingle, 544 U.S. at 528–29. Defendant proffers Plaintiff must additionally show that the law is not rationally related to a legitimate state interest. Here, Defendant argues that the

1   FAC contains no such allegations that the ordinance was arbitrary and capricious, nor any

2   allegations that it is not rationally related to a legitimate state interest.  Defendant further submits

3   that Plaintiff cannot do so, in that the attached Planning Commission Memorandum September 7,

4   2017 clearly indicates the legislative intent to reduce nuisance complaints, which is not arbitrary

5   and capricious.

6          Plaintiff responds that even alongside a takings claim, a plaintiff may plead a denial of

7   substantive due process if it alleges irrational or arbitrary conduct.  See Lyon v. Agusta S.P.A.,

8   252 F.3d 1078, 1086 (9th Cir.2001); Ileto v. Glock, Inc., 565 F.3d 1126, 1140 (9th Cir. 2009).

9   Plaintiff highlights its allegations that: (1) the Ordinance "sought to prohibit that which was

10  already illegal and actionable – cockfighting and nuisance activity – but it trampled over the

11  well-established property rights of law-abiding citizens in the process"; (2) the Ordinance "made

12  no provision for the continued lawful possession of roosters that predated the ordinance, even if

13  no other laws were being or had ever been violated . . .  was no compensation for the elimination

14  of rooster owners' lost property rights, nor was there any provision or guidance provided

15  regarding the sale, transfer or destruction of roosters, which essentially resulted in the placing of

16  many more roosters at risk of being misused by requiring law-abiding, loving owners to

17  relinquish them"; and (3) that Stanislaus County's actions "lacked a rational relationship to a

18  government interest."  (FAC ¶¶ 3, 16, 17(b).)  Plaintiff argues these allegations are collectively

19  sufficient to satisfy the standard for pleading a substantive due process violation as a challenge to

20  land use regulation may state a substantive due process claim, so long as the regulation serves no

21  legitimate governmental purpose. Lingle, 544 U.S. at 542; North Pacifica LLC v. City of

22  Pacifica, 526 F.3d 478, 484 (9th Cir. 2008).  Plaintiff submits the Ninth Circuit has recognized

23  that Lingle undid its prior "must allege either a takings or substantive due process violation"

24  holdings.  See Crown Point, 506 F.3d at 855-856.

25         Defendant replies Plaintiff wrongly argues both claims may be simultaneously asserted.

26  (Reply 8.)  Defendant argues Lyon involved survivors of a plane crash product liability suit, not

27  a regulatory takings claim – that the court did not adjudicate the takings claim under the Fifth

28  Amendment, nor the substantive due process clause under the Fourteenth – and likewise, in

1   Lleto, the Ninth Circuit rejected an argument that the Protection of Lawful Commerce in Arms

2   Act, 15 U.S.C. §§ 7901-7903, amounted to a takings under the Fifth Amendment.  (Reply 8.)

3   Defendant highlights that in Crown Point, the Supreme Court stated, "the Fifth Amendment

4   would preclude a due process challenge only if the alleged conduct is actually covered by the

5   Takings Clause."  Crown Point, 506 F.3d at 855.  Defendant proffers the Supreme Court went on

6   to find the Fifth Amendment did not apply to the claim, remanding to determine whether a

7   substantive due process claim under the Fourteenth Amendment was adequately asserted.  Thus,

8   Defendant argues here, Plaintiff cannot have it both ways, either the Fifth Amendment applies,

9   or the Fourteenth, but not both.

10          2.      The Court Recommends Denying Defendant's Motion to Dismiss

11          In Crown Point the Ninth Circuit addressed the interplay between takings claims and due

12   process challenges to land use regulations:

> Applying the *Lewis* rule to land use, the Fifth Amendment would
> preclude a due process challenge only if the alleged conduct is
> actually covered by the Takings Clause. *Lingle* indicates that a
> claim of arbitrary action is not such a challenge. Rather, it
> identifies three basic categories of regulatory action that generally
> will be deemed a taking for Fifth Amendment purposes: where
> government requires an owner to suffer a permanent physical
> invasion of property, *see Loretto v. Teleprompter Manhattan
> CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868
> (1982); where a regulation deprives an owner of all economically
> beneficial use of property, *see Lucas v. South Carolina Coastal
> Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992);
> and where the *Penn Central* factors are met, *Penn Central Transp.
> Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631
> (1978). To the extent a property owner's complaint falls within one
> of these categories (or some other recognized application of the
> Takings Clause), *Lewis* suggests that the claim must be analyzed
> under the Fifth Amendment whether or not it proves successful;
> but to the extent that the conduct alleged cannot be a
> taking, *Lewis* and *Lingle* indicate that a due process claim is not
> precluded. *Lingle,* 544 U.S. at 542, 125 S.Ct. 2074 ("[A] regulation
> that fails to serve any legitimate governmental objective may be so
> arbitrary or irrational that it runs afoul of the Due Process
> Clause.")  (citing *Lewis,* 523 U.S. at 846, 118 S.Ct.
> 1708); *see Lingle,* 544 U.S. at 549, 125 S.Ct. 2074 (Kennedy, J.
> concurring) (noting that the *Lingle* decision "does not foreclose the
> possibility that a regulation might be so arbitrary or irrational as to
> violate due process").

28   Crown Point, 506 F.3d at 855–56 ("Accordingly, it is no longer possible in light of *Lingle* and

1   *Lewis* to read *Armendariz* as imposing a blanket obstacle to all substantive due process
2   challenges to land use regulation.").  The Ninth Circuit held "the Fifth Amendment does not
3   invariably preempt a claim that land use action lacks any substantial relation to the public health,
4   safety, or general welfare."  Id. at 856.

5         Defendant appears correct that ultimately, Plaintiff cannot have it both ways in
6   maintaining both a takings claim and a substantive due process challenge to a land use
7   regulation.  See id. at 855-56 ("To the extent a property owner's complaint falls within one of
8   these categories (or some other recognized application of the Takings Clause), *Lewis* suggests
9   that the claim must be analyzed under the Fifth Amendment whether or not it proves successful;
10  but to the extent that the conduct alleged cannot be a taking, *Lewis* and *Lingle* indicate that a due
11  process claim is not precluded."); see also N. Pacifica, 526 F.3d at 484 ("The irreducible
12  minimum of a substantive due process claim challenging land use regulation is failure to advance
13  any governmental purpose . . .  there is a due process claim where a 'land use action lacks any
14  substantial relation to the public health, safety, or general welfare[,]' [s]uch a claim cannot be
15  remedied under the Takings Clause.") (citations omitted).

16        However, it appears Plaintiff may properly plead such differing claims at the outset.  Of
17  note, in Merrill, the court initially dismissed the substantive due process claim as preempted by
18  the Takings Clause, however, then found such absolute holding abrogated by Crown Point and
19  similar cases.  Merrill v. Cnty. of Madera, No. 1:05-CV-0195 AWI SMS, 2013 WL 1326542, at
20  *5–7 (E.D. Cal. Mar. 29, 2013) ("Since *Crown Point,* the Ninth Circuit has found that the Fifth
21  Amendment does not automatically preempt a Substantive Due Process claim that alleges a
22  defendant's land use action or regulation lacked any substantial relation to public health, safety,
23  or general welfare . . . [and] [i]n light of these decisions, a Substantive Due Process claim
24  challenging a wholly illegitimate land use action or regulation is not foreclosed by the Takings
25  Clause."); see also Shanks v. Dressel, 540 F.3d 1082, 1084 (9th Cir. 2008) ("Although not
26  preempted by the Fifth Amendment's Takings Clause, [Crown Point,] Logan Neighborhood's
27  due process claim nonetheless fails.").

28        Here, as the Court found above, at least currently Plaintiff cannot maintain a takings

1    claim through the operative complaint.  The Court also finds Plaintiff's allegations regarding the

2    nature of the passing of the Ordinance and lack of rational relationship adequately distinguish the

3    claims at this juncture.  See Colony Cove, 640 F.3d at 960-61 ("[T]o the extent Colony Cove

4    alleges a due process violation on the ground that the Board's application of the 1979 Ordinance

5    and Amended Guidelines to Colony Cove's application for a rental rate increase denied it a fair

6    return on its investment, Claim 2 is subsumed by the Takings Clause . . .  to the extent Colony

7    Cove alleges a due process violation on the ground that the Board acted arbitrarily or irrationally

8    in applying the 1979 Ordinance and Amended Guidelines, or that the 1979 Ordinance and

9    Amended Guidelines fail to serve any legitimate governmental objective, the district court did

10   not err in dismissing Claim 2.").[23]  Thus the Court would not recommend dismissal of the

11   substantive due process claim based on Crown Point and related cases.

12          Turning to whether the factual allegations are sufficient to support a substantive due

13   process claim, the Court notes the standard Plaintiff must meet is quite high.  "The Supreme

14   Court has 'long eschewed ... heightened [means-ends] scrutiny when addressing substantive due

15   process challenges to government regulation' that does not impinge on fundamental rights."

16   Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008) (citations omitted).  "Accordingly, the

17   'irreducible minimum' of a substantive due process claim challenging land use action is failure

18   to advance any legitimate governmental purpose."  Id. (citing  North Pacifica, 526 F.3d at 484).

19   Thus, Plaintiff must meet an "exceedingly high burden" to show the County "behaved in a

20   constitutionally arbitrary fashion."  Shanks, 540 F.3d at 1088 (citing Matsuda v. City & Cnty. of

21   Honolulu, 512 F.3d at 1156); see also 512 F.3d at 1156 ("In evaluating a substantive due process

22   claim such as the Lessees', we have determined that state action which 'neither utilizes a suspect

23   classification nor draws distinctions among individuals that implicate fundamental rights' will

24   violate substantive due process only if the action is "not rationally related to a legitimate

25   governmental purpose.") (citation omitted); N. Pacifica, 526 F.3d at 485 ("The rational

26

27   [23] In Colony Cove, the "district court dismissed Colony Cove's facial takings claim as time-barred, its as applied
     takings claim as unripe, and its as applied due process claim for failure to state a claim; the district court declined to
28   exercise supplemental jurisdiction over Colony Cove's related state law claim."  Colony Cove, 640 F.3d at 951.

1   relationship test ... applies to substantive due process challenges to property zoning ordinances."

2   (quoting Christensen v. Yolo County Bd. of Supervisors, 995 F.2d 161, 165 (9th Cir.1993))).

3        This question presents a somewhat closer call than the other findings in this order, in that

4   the Court may find the allegations concerning laws already covering nuisances and cockfighting

5   specifically, to sufficiently state a lack of rational relationship, or pretext for the passage of the

6   Ordinance, (FAC ¶¶ 2-4, 16-18).  See Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1237

7   (9th Cir. 1994) ("Except for a declaration that merely asserts that the moratorium is pretextual,

8   the Kawaokas do not provide any evidence that this is so.").

9        However, the Court finds the Plaintiff's allegations nearly wholly conclusory, and the

10  Court concludes there are insufficient facts to meet the high standard for a substantive due

11  process challenge.   See Shanks, 540 F.3d at 1088; Colony Cove, 640 F.3d at 961–62

12  ("Accordingly, in light of the purpose and provisions of the Ordinance, and the rents allowed

13  under the Ordinance and Guidelines prior to Colony Cove's purchase of the Park in April 2006,

14  dismissal of the as applied due process claim (Claim 2) is appropriate because the factual

15  allegations in the Complaint, and the documents referenced therein, do not provide a sufficient

16  basis for a claim that the Board's decision on Colony Cove's application for a rent increase

17  reflects action that was arbitrary, irrational, or lacking any reasonable justification in the service

18  of a legitimate government interest."); ELH LLC v. Westland Irrigation Dist., No. 2:16-CV-

19  1318-SI, 2017 WL 1055960, at *5 (D. Or. Mar. 20, 2017) ("Plaintiffs fail adequately to plead a

20  substantive due process claim. Plaintiffs complain about Westland's allocation of water rights

21  contrary to Oregon law, Westland's poor accounting practices and lack of transparency,

22  withholding of public information, and general lack of responsiveness [and] [such] allegations

23  fall short of 'a sudden change in course, malice, bias, pretext or, indeed, anything more than a

24  lack of due care . . . [and] Plaintiffs do not plead allegations sufficient to show that Westland

25  acted in a way completely untethered from a legitimate governmental interest in public health,

26  safety, or welfare.") (internal citation and quotations omitted).

27       Accordingly, the Court recommends granting Defendant's motion to dismiss Plaintiff's

28  substantive due process challenge.  The Court additionally recommends granting leave to amend

1    to the extent Plaintiff in good faith can allege facts meeting the high standards discussed above,

2    and taking into account the statute of limitations findings regarding facial challenges discussed

3    above.  In this regard, while not specifically raised in the motion to dismiss, the Court  discusses

4    ripeness as to the substantive due process claim as that may impact any potential amendment.

5           3.      <u>Additional Comments Regarding Ripeness of Substantive Due Process Claim</u>

6         Defendant did not expressly raise a ripeness argument as to the substantive due process

7    challenge.  (<u>See</u> Mot. 11-14.)  Nonetheless, the <u>Hoffman</u> court, discussed *supra* Section IV(F),

8    additionally granted dismissal of the substantive due process claim on ripeness grounds.

9    <u>Hoffman Bros.</u>, 2021 WL 4429465, at *6 (E.D. Cal. Sept. 27, 2021) ("The Court finds Plaintiffs'

10    substantive due process claim unripe for the same reason Plaintiffs' takings claim is unripe."

11    (citing <u>Kinzli v. City of Santa Cruz</u>, 818 F.2d 1449, 1455–56 (9th Cir.), <u>amended</u>, 830 F.2d 968

12    (9th Cir. 1987))).[24]  In <u>Kinzli</u>, the Ninth Circuit held: "the Kinzlis' equal protection claim is not

13    ripe for consideration by the district court 'until planning authorities and state review entities

14    make a final determination on the status of the property,' and thus the "equal protection claim

15    therefore is not ripe, just as their taking claim is not ripe."  <u>Kinzli</u>, 818 F.2d at 1455–56 (quoting

16    <u>Norco Const., Inc. v. King Cnty.</u>, 801 F.2d 1143, 1145 (9th Cir. 1986)); <u>see also</u> <u>Norco</u>, 801 F.2d

17    at 1145 ("We conclude that under federal law the general rule is that claims for inverse taking,

18    and for alleged related injuries from denial of equal protection or denial of due process by

19    unreasonable delay or failure to act under mandated time periods, are not matured claims until

20    planning authorities and state review entities make a final determination on the status of the

21    property.").

22         The Court notes that in <u>North Pacifica</u>, the district court "dismissed the due process claim

23    on the ground that NP had not shown that it had sought and had been denied just compensation

24    through state remedies," but the Ninth Circuit found the "district court erred, because NP did not

25    attempt to plead a takings claim, but instead attempted to plead a substantive due process claim."

26    <u>N. Pacifica</u>, 526 F.3d at 485.  This error appears to stem from reliance on the second prong of the

27

28    [24] The <u>Hoffman</u> court also dismissed the procedural due process claim.  2021 WL 4429465, at *7 ("[T]he Court finds Plaintiffs have not made sufficient allegations to find their procedural due process claim ripe for review.").

1  ripeness analysis.  See Basile v. City of Poway, No. 07CV1793 DMS JMA, 2009 WL 10726770,

2  at *5 (S.D. Cal. July 8, 2009) ("Unlike takings claims, only the first prong of Williamson applies

3  to civil rights claims in the land use context [Kinzli; N. Pacifica] . . . [h]owever, where an alleged

4  constitutional violation is separate and distinct from any alleged taking, Williamson's first prong

5  is inapplicable.") (citations omitted); N. Pacifica, 526 F.3d at 485 ("In a takings claim, the

6  plaintiff must affirmatively establish that it has been denied just compensation . . . essentially

7  because the Takings Clause itself prohibits only takings without just compensation.").  Thus, the

8  "question is whether Plaintiffs' injuries are 'actual [and] concrete injuries, which are separate

9  from any taking [Plaintiffs] may have suffered.' " Basile, 2009 WL 10726770, at *5 (quoting

10  Harris, 904 F.2d at 501).

11       Again, Defendant did not expressly raise ripeness as a grounds for dismissal of the

12  substantive due process claim, however, the above law can guide the Court in considering leave

13  to amend, or should at least guide the Plaintiff in deciding whether to include such claim in an

14  amended complaint.

15       **H.    Defendant's Motion to Dismiss the Fourth Cause of Action for Forfeiture**

16       Defendant moves to dismiss Plaintiff's fourth cause of action for forfeiture.  (Mot. 13-

17  14.)  The Court recommends granting Defendant's motion to dismiss, with leave to amend

18  limited as stated below.

19       1.    The Parties' Arguments

20       Defendant moves to dismiss Plaintiff's cause of action for forfeiture arguing Plaintiff

21  fails to state sufficient facts, Lakeview Dev. Corp. v. City of S. Lake Tahoe, 915 F.2d 1290,

22  1295 (9th Cir. 1990).  Defendant highlights the FAC alleges Defendant has "forfeited the vested

23  entitlement of CAAPG's constituent members . . . to continue being able to use their property in

24  manners that were lawful prior to the enactment of the subject zoning ordinance."  (FAC ¶ 37.)

25  Defendant submits this interpretation is incorrect, as the original ordinance never granted the

26  rights to own or raise roosters on certain properties.  Defendant proffers the definition of "Small

27  Livestock Farming" in the Ordinance has remained unchanged since it was introduced in 1951;

28  that the words "or any" in the ordinance has been historically interpreted by the Planning

1    Department to prohibit animals listed after this specific wording, including roosters; and that the

2    County Department of Planning memorandum makes clear that the amendment was simply

3    making the existing language more definitive in terms of the prohibition of roosters on certain

4    properties.  (Mot. 15.)  In other words, Defendant contends that the amendment did not eliminate

5    any predating non-conforming land use, because the historical interpretation of the ordinance

6    never intended to provide rights to own roosters in the first place, and moreover, despite the

7    conclusory assertions of law in Paragraph 17(d) of the FAC, Plaintiff fails to allege that any

8    single property owner, located in zoning Districts R-A or A-2, has lost the right to use or raise

9    roosters following the enactment of the Amendment.  (Mot. 13-14.)

10         Defendant also argues that even if CAAPG could allege some vested property right,

11   courts have recognized the discontinuance of a nonconforming use where the use is considered a

12   public nuisance, and is a lawful use of powers.  Santa Barbara Patients' Collective Health Co-op.

13   v. City of Santa Barbara, 911 F. Supp. 2d 884, 893 (C.D. Cal. 2012).   Defendant notes that here,

14   the County specifically states the amendment was "proposed in response to numerous nuisance

15   complaints . . . specifically roosters."  (ECF No. 1, Ex. A.)  Defendant proffers that from January

16   1, 2014 to June 22, 2017, Stanislaus County received a total of 157 rooster related complaints.

17   (ECF No. 1, Ex. A.)  Of those total complaints, 45% cited noise concerns, 6% cited illegal

18   fighting, and 3% cited odor.  (Id.) the remaining cited miscellaneous concerns and/or no specific

19   reason.  (Id.)  Furthermore, Defendant argues the Ordinance was consistent with the County's

20   General Zoning plan, including the Noise Element, which aims to limit exposure of the

21   community to excessive noise levels, and thus Defendant submits that CAAPG's forfeiture claim

22   cannot succeed.  (Mot. 14.)

23         Plaintiff responds that Defendant relies on and asks the Court to adopt its strained

24   interpretation of its pre-amendment ordinances, in that Defendant argues: that the small livestock

25   ordinance has never changed, and that the explicit elimination of the right to own or possess any

26   roosters in the currently amended version was a mere clarification, i.e, the inclusion of "any

27   roosters" in the definition of small livestock in the prior ordinance really meant "none."  Plaintiff

28   argues this is "obviously" not an issue that the Court can rule upon as a matter of law, and,

1    moreover, this argument defies the plain reading of the provisions as set forth in the Plaintiff's

2    complaint as absent some compelling proof to the contrary, statutes – and ordinances – are

3    supposed to be given their plain and ordinary meaning.  United States v. Romo-Romo, 246 F.3d

4    1272, 1275 (9th Cir. 2001) ("[W]e should usually give words their plain, natural, ordinary and

5    commonly understood meanings.").

6           As for Defendant's other argument, that Plaintiff frames as "[s]hifting to the other side of

7    its mouth," Defendant contends the amendment is in fact a change in the law, but one that is

8    well-supported, and Defendant asks this Court to accept – on a pleadings motion – that there was

9    an appropriate justification for the 2017 amendment, based on cites to various statistics regarding

10   which it seeks judicial notice.  Plaintiff argues this is improper.  See Cactus Corner, LLC v. U.S.

11   Dep't of Agric., 346 F.Supp.2d 1075, 1099 (E.D. Cal. 2004).  Thus, Plaintiff argues that simply

12   stated, the Court can accept the existence of public documents and readily ascertainable facts but

13   cannot accept their entire contents as proven fact.

14          Plaintiff suggests that Defendant does not seem to contest that if its "proof" is rejected,

15   that a capricious government forfeiture of a vested right may implicate constitutional concerns.

16   Further, Plaintiff submits that "[n]or is the "vested rights doctrine" limited to the permit contexts,

17   but instead extends to all property interests, whether concrete or abstract, and: "[A] vested right

18   of action is property in the same sense in which tangible things are property and is equally

19   protected from arbitrary interference."  Barrett v. United States, 798 F.2d 565, 575 (2d Cir.1986)

20   (quoting Pritchard v. Norton, 106 U.S. 124, 132 (1882)).

21          Defendant replies that Plaintiff fails to cite any authority for its argument that the prior

22   ordinance language cannot be decided at this stage of the proceedings.  Defendant also argues

23   that otherwise, Plaintiff fails to reasonably dispute that the phrase "or any" after the list of

24   animals in the original 1951 ordinance could mean anything other than effectively "none."

25   (Reply 8.)

26          2.     The Court Recommends Plaintiff's Fourth Cause of Action be Dismissed

27          The Court agrees with Plaintiff, at least as to extent the Court should be cautious

28   regarding taking judicial notice of certain facts and attempt to determine previous legislative

1   intent, interpretation, and whether such was *the* basis and proper basis, at this stage.[25]   See
2   Cactus Corner, LLC v. U.S. Dep't of Agric., 346 F.Supp.2d 1075, 1099 (E.D. Cal. 2004) ("The
3   existence and authenticity of a document which is a matter of public record is judicially
4   noticeable such as the authenticity and existence of a particular order, pleading, public
5   proceeding, or census report, which are matters of public record, but the veracity and validity of
6   their contents (the underlying arguments made by the parties, disputed facts, and conclusions of
7   fact) are not.").   Clearly, the County felt it necessary to amend the law, to clarify its position in
8   the face of a potential lack of clarity or custom and practice since the law was initially passed in
9   the 1950s.

10       Nonetheless, the Court finds Plaintiff's forfeiture cause of action fails because there is no
11   allegation of a permit or equivalent that would apparently suffice under California law that
12   governs the forfeiture claim.   The Court now turns to this issue.

---

13   [25]   The Court does find Defendant's arguments concerning the previous interpretation appear correct based on the
14   Court's reading of the language of the statute.   Plaintiff's complaint proffers that Title 21, section 21.12.530 of the
     Stanislaus County Zoning Ordinance, provided:
15       "Small livestock farming" means the raising or keeping of more than twelve chicken hens, turkeys
         or twelve pigeons (other than defined in Section 21.12.500) or twelve similar fowl or twelve
16       rabbits or twelve similar animals, or four permanent standard beehives, or any roosters, quacking
         ducks, geese, guinea fowl, peafowl, goats, sheep, worms or similar livestock provided that the
17       term "small livestock farming" as used in this title shall not include hog farming, dairying or the
         raising or keeping for commercial purposes of horses, mules or similar livestock as determined by
18       the board of supervisors. The keeping of animals in quantities less than described above is
         permitted in any district.
     (FAC ¶ 11.)
19       However, Plaintiff's complaint alleges that prior to November 16, 2017, Stanislaus County law placed no
20   limits on the number of roosters its residents could own, so long as they did so in an otherwise lawful and peaceable
     manner that did not infringe on the rights of any other property owner.   (FAC ¶ 11.)   Perhaps it was originally
21   intended to be interpreted that way, but custom and practice resulted in the County needing to clarify.   The Court at
     this time declines to make a determination of whether the statute is ambiguous on the record before it, and simply
22   notes that these type of laws and regulations do not easily lend themselves to easy interpretation.   See 29 C.F.R. §
     780.328 ("The term 'livestock' includes cattle, sheep, horses, goats, and other domestic animals ordinarily raised or
23   used on the farm . . . Turkeys or domesticated fowl are considered poultry and not livestock within the meaning of
     this exemption."); Levine v. Conner, 540 F. Supp. 2d 1113, 1115–17 (N.D. Cal. 2008) ("In determining whether a
24   statute's language is unambiguous, words are to be given their ordinary and natural meaning and courts are to follow
     the common practice of consulting dictionary definitions to clarify the [word's] ordinary meaning and look to how
25   the terms were defined at the time the statute of was adopted . . . The category of animals could thus be limited to a
     narrow group of quadrupeds like cattle and other bovine creatures or alternatively, it could be all-encompassing, as
26   the plaintiffs contend.   Indeed, the scope of domestic animals used or raised on a farm can potentially extend to
     guinea pigs, cats, dogs, fish, ants, and bees.   Under plaintiffs' proffered definition, it is unclear which domestic
27   animals are to be included if they are not kept for profit, and under defendant's definition above, it is unclear which
     farm animals are useful   . . .   Furthermore, the fact that Congress frequently vacillates between
     treating livestock and poultry as distinct concepts informs this court's decision . . .   Since the
28   term livestock includes poultry in some sections, but not in others, the term standing alone is necessarily
     ambiguous.").

1    The "doctrine of vested rights ... states that a property owner who, [1] in good faith
2 reliance on a government permit, [2] has performed substantial work and incurred substantial
3 liabilities *has a vested right* to ... use the premises as the permit allows." Santa Barbara Patients'
4 Collective Health Co-op, 911 F. Supp. 2d at 892 (emphasis added by quoting source) (quoting
5 Communities for a Better Env't v. S. Coast Air Quality Mgmt. Dist., 48 Cal. 4th 310, 322, 226
6 P.3d 985, 994 (2010)).  "In contrast to a taking or deprivation claim, the gravamen of a 'vested
7 rights' claim is that the landowner has a right to a particular use of his land because he has relied
8 to his detriment on a formal government promise (in the form of a permit) stating that he can
9 develop that use."  Lakeview, 915 F.2d at 1295.  "The claim is thus a species of government
10 estoppel," and a "claim of estoppel against the government rests not on Constitutional norms of
11 fairness but on broader norms of equity."  Id. ("Since no federal constitutional or statutory law
12 requires the states to recognize any doctrine of governmental estoppel, let alone a doctrine with
13 the particular contours that Lakeview urges us to recognize, we must reject Lakeview's
14 suggestion that federal law governs the issue of vested rights.") (citations omitted).

15    As far as the framing of the motion as brought, Defendant cites the law that the vested
16 rights doctrine requires a permit and investment, but does not specifically argue as a basis for
17 dismissal that there is a failure to allege a permit.  Nonetheless, Plaintiff does argue: "Nor is the
18 'vested rights doctrine' limited to the permit contexts, but instead extends to all property
19 interests, whether concrete or abstract."  (Opp'n 14.)  In support of this proffer, Plaintiff cites the
20 Second Circuit: "Indeed the Supreme Court as far back as 1882 had stated, 'a vested right of
21 action is property in the same sense in which tangible things are property, and is equally
22 protected from arbitrary interference.' "  Barrett, 798 F.2d at 575 (quoting Pritchard, 106 U.S. at
23 132 (1882)).  Thus, while perhaps not a clear argument by Defendant, the law was cited in the
24 initial motion and Plaintiff addressed the legal issue, and the thus the Court has examined it.  The
25 Court finds it provides a basis for dismissing the Plaintiff's forfeiture claim.  Even if the issue
26 could be considered not fully raised or briefed, the Court finds the below analysis guides future
27 amendments, given the Court finds all claims subject to dismissal on statute of limitations
28 grounds.

1    The Court has not located a case where the doctrine has applied under California law to a
2    situation where a permit was not issued, and the California law cases clearly speak of the
3    requirement of an issuance of the permit in relation to investment in reliance on such permit.
4    The Court finds key differences between building on one's property (and the permit process for
5    that), and the Ordinance here that is impacting the ability to hold a form of personal property on
6    the grounds of the real property that is subject to the zoning ordinance.   For example, the
7    Ordinance is not outlawing the building of a chicken coop after being issued a permit to
8    specifically do so on the land.

9        While the Second Circuit case cited by Plaintiff cited a Supreme Court case, the Court
10   notes that in Lakeview, the Ninth Circuit rejected an argument that the Supreme Court had
11   suggested to look beyond state law.  Lakeview, 915 F.2d at 1294 ("Lakeview argues that the case
12   of Nollan v. California Coastal Commission, 483 U.S. 825, 833–34 n. 2, 107 S.Ct. 3141, 3146 n.
13   2, 97 L.Ed.2d 677 (1987), changed the framework for analyzing the issue, and that in the wake of
14   *Nollan*, we may depart from the California cases . . . [t]here are two difficulties with this
15   argument.").  Specifically, the Ninth Circuit found:

> There are two difficulties with this argument. First, the *Nollan* case
> dealt only with a property owner's right to build a single-family
> house, traditionally among the most minimally-regulated uses.
> Second, and more important, the *Nollan* court's reference to a
> landowner's abstract "right" to build in no way suggests that a
> landowner has an unconditional right under the taking or
> deprivation clauses of the federal Constitution to build any
> particular project he chooses. The sentence quoted from
> the *Nollan* footnote is qualified by its reference to
> "legitimate permitting requirements." The footnote does not imply
> that a permitting requirement is "illegitimate" simply because it
> disallows a previously permitted use. It is well established that
> there is no federal Constitutional right to be free from changes in
> land use laws. *See, e.g., Haas v. City and County of San
> Francisco,* 605 F.2d 1117, 1120 (9th Cir.1979); *Traweek v. City
> and County of San Francisco,* 659 F.Supp. 1012, 1026
> (N.D.Cal.1984) ( "[P]laintiffs bought into a heavily regulated
> situation and were on notice that ... [t]heir purchase of property ...
> was therefore necessarily 'subject to further legislation upon the
> same topic.' *Veix v. Sixth Ward Building and Loan
> Association,* 310 U.S. 32, 38, 60 S.Ct. 792, 795, 84 L.Ed. 1061
> (1940)"). A claim brought under the federal Constitution charging
> the taking or deprivation of property thus cannot be premised
> solely on the charge that the government has repealed a law and
> revoked a once valid permit.

1 | Lakeview, 915 F.2d at 1294–95.

2 |      The Ninth Circuit described that "[t]he seminal case on vested rights" is Avco
3 | Community Developers, Inc. v. South Coast Regional Commission, 17 Cal.3d 785, 132 Cal.Rptr.
4 | 386, 553 P.2d 546 (1976). Lakeview, 915 F.2d at 1296. The California Supreme Court "stated
5 | the general rule as follows: '[I]f a property owner has performed substantial work and incurred
6 | substantial liabilities in good faith reliance upon a permit issued by the government, he acquires
7 | a vested right to complete construction in accordance with the terms of the permit.' " Id.
8 | (quoting Avco, 132 Cal.Rptr. at 389). Avco "addressed the question of what qualified as a
9 | 'permit' for the purposes of this rule, and in so doing addressed as well the general principles
10 | that inform the vested rights doctrine." Id. (footnote omitted). The Ninth Circuit explained the
11 | decision in Avco as focusing on different types of permits, or the meaning of a "building"
12 | permit, more specifically:

13 |      Prior to the *Avco* decision, California's lower courts had held that
14 | to obtain a vested right to complete the construction of a particular project, the landowner had to obtain a "building permit."  . . .
15 | In *Avco,* the developer argued that the building permit rule should not apply to larger development projects when the developer has
16 | subdivided the land and installed subdivision improvements pursuant to governmental authorization. It pointed out that the
17 | building permit is issued late in the development process, often after the developer has performed a great deal of work on the land
18 | in reliance on more preliminary approvals. To allow the government to reverse itself at that late a point, argued the
19 | developer, would lead to the waste of resources on uncompleted projects and an unnecessary increase in the costs of building
20 | housing due to the excessive risks involved.

21 | Lakeview, 915 F.2d at 1296 (9th Cir. 1990). Notably, the defendant in Avco only argued for a
22 | modest expansion of the doctrine where the permit, while perhaps not named "building" permit,
23 | would still provide substantially the same specificity as to the project. Id. As the Ninth Circuit
24 | describes, the California Supreme Court did not expressly decide whether there should be an
25 | exception, as it was not determinative given the permits did not contain sufficient information.
26 | Id. Lakeview involved arguments to the Ninth Circuit regarding extending the doctrine to a
27 | "conditional use permit" or "special use permit":

28 |      The defendant Coastal Commission in *Avco* conceded to the court

that in the context of larger development projects, it did not believe there should be an absolute requirement that the document relied on be designated a "building permit" in order for the developer to obtain a vested right. The Commission stated that if another kind of permit, such as a "conditional use permit," afforded substantially the same specificity and definition to a project as did a building permit, such a permit should suffice. 17 Cal.3d at 793–94, 132 Cal.Rptr. at 391. A "conditional use permit" is another name for a "special use permit," which is what Lakeview has obtained in this case.

The *Avco* court did not decide the question whether it would recognize an exception to the building permit rule; rather it held that even if an exception were appropriate, the permits relied on by Avco were insufficient because the permits did not relate to "identifiable buildings," and because maps and plans submitted to the county government did not advise the county of such "elementary details as the dimension, height ... or placement of the buildings to be built on the tract." 17 Cal.3d at 794, 132 Cal.Rptr. at 392. This rule requiring specificity recognizes that since the grant of a vested right to develop a given tract of land takes away power from the government to control the use of the land, it is fitting that in exchange for yielding that power, the public know the facts concerning the approved use.

Although the court did not definitively decide whether it would recognize an exception to the building permit rule, it stated that its conclusion was "not founded upon an obdurate adherence to archaic concepts inappropriate in the context of modern development practices nor upon a blind insistence on a document entitled 'building permit.' " 17 Cal.3d at 797, 132 Cal.Rptr. at 394. The court thus left open the question whether a "special use permit," if sufficiently specific, could form the basis of a vested right claim, but the language it used strongly indicates how it would answer the question.

While the court suggested that it would not necessarily insist on a "building permit" as a prerequisite to a vested right, it also suggested that if it were to broaden the class of permits on which developers could rely, it would then have to guard against the dangers of a too broad expansion of the vested rights doctrine.

Lakeview, 915 F.2d at 1296–97.  Thus, the Ninth Circuit recognized any expansion must take into account the more broad legal and policy implications.  Thus, the Court turns to the concerns expressed by the California Supreme Court, including that of essentially freezing zoning laws and impairing the government's right to control land use policy:

If we were to accept the premise that the construction of subdivision improvements or the zoning of the land for a planned community are sufficient to afford a developer a vested right to construct buildings on the land in accordance with the laws in effect at the time the improvements are made or the zoning

enacted, there could be serious impairment of the government's right to control land use policy. In some cases, the inevitable consequence would be to freeze the zoning laws applicable to a subdivision or a planned unit development as of the time these events occurred.

Thus tracts or lots in tracts which had been subdivided decades ago, but upon which no buildings have been constructed could be free of all zoning laws enacted subsequent to the time of the subdivision improvement, unless facts constituting waiver, abandonment, or opportunity for amortization of the original vested right could be shown. In such situations, the result would be that these lots, as well as others in similar subdivisions created more recently or lots established in future subdivisions, would be impressed with an exemption of indeterminate duration from the requirements of any future zoning laws.

Avco, 17 Cal. 3d at 797–98.

It is true that "the vested rights doctrine prevents governments from 'changing the zoning laws' in order to prevent the completion of a previously approved project." Ass'n of Irritated Residents v. C&R Vanderham Dairy, No. CIVF051593AWISMS, 2006 WL 2644896, at *12 (E.D. Cal. Sept. 14, 2006) (citing Russ Bldg. P'ship v. City & Cnty. of San Francisco, 44 Cal. 3d 839, 846, 750 P.2d 324 (1988); see also 44 Cal. 3d at 846 ("Once a landowner has secured a vested right the government may not, by virtue of a change in the zoning laws, prohibit construction authorized by the permit upon which he relied." (quoting Avco, 17 Cal. 3d at 791)); Santa Barbara Patients' Collective Health Co-op., 911 F. Supp. 2d at 892 (C.D. Cal. 2012) ("This right is 'vested' and it does not go away with the enactment of a new ordinance . . . it is undisputed that Plaintiff obtained a valid Dispensary Use Permit to build a dispensary . . . incurred substantial costs in good faith reliance of that permit [and] [a]ccordingly, Plaintiff has acquired a vested right to operate the dispensary that cannot be infringed by the Revised Ordinance without due process of law.") (footnote omitted).

However, "[c]ourts have yet to extend the vested rights or estoppel theory to instances where a developer lacks a building permit or the functional equivalent, regardless of the property owner's detrimental reliance on local government actions and regardless of how many other land use and other preliminary approvals have been granted.... California courts apply this rule most strictly." Hermosa Beach Stop Oil Coal. v. City of Hermosa Beach, 86 Cal. App. 4th 534, 553,

103 Cal. Rptr. 2d 447 (2001) (quoting Toigo v. Town of Ross, 70 Cal. App. 4th 309, 322, 82 Cal. Rptr. 2d 649 (1998)); see also Get Outdoors II, L.L.C. v. City of Lemon Grove, Cal., 378 F. Supp. 2d 1232, 1240 (S.D. Cal. 2005) ("In California, a party has a vested right in a permit only once the permit is issued and the party has performed substantial work and incurred substantial expense in reliance on the permit."), aff'd sub nom. Get Outdoors II, LLC v. City of Lemon Grove, 253 F. App'x 636 (9th Cir. 2007).

Here, there is no permit securing a vested right relating to the roosters, with the specificity such permit provides as to allow for reliance and investment based on such parameters. See Ass'n of Irritated Residents, 2006 WL 2644896, at *12 ("[V]ested rights based on a permit are subject to limitations that may be contained in that permit."); Hermosa Beach, 86 Cal. App. 4th at 552–53 ("The City thus retained considerable discretion whether to approve Macpherson's plans and issue the required permits . . . [and] [i]n the absence of these permits, Macpherson can claim no vested right to continue with the project."); Id. at 552 ("Macpherson's vested rights and equitable estoppel arguments conflict with well-established authority holding that no right to develop vests until all final discretionary permits have been authorized and significant 'hard costs' have been expended in reliance on those permits—that is, until substantial construction has occurred in reliance on a building permit."); Santa Monica Pines, Ltd. v. Rent Control Bd., 35 Cal. 3d 858, 865–66, 679 P.2d 27, 32 (1984) ("We are reluctant to conclude, however, that approval of a subdivision map for condominium conversion necessarily leads to a vested right to freedom from subsequent rent control legislation . . . it is well established that the rights which may 'vest' through reliance on a government permit are no greater than those specifically granted by the permit itself."); Congregation ETZ Chaim v. City of Los Angeles, 371 F.3d 1122, 1125 (9th Cir. 2004) ("[T]he size of the building was clearly delineated in the building plans that were reviewed at length and approved by the City. The issuance of a valid building permit by the City was essentially a representation that the Congregation's plans were in accordance with the terms of the Agreement."); Get Outdoors II,, 378 F. Supp. 2d at 1240 ("Plaintiff never received a permit from Lemon Grove for any of its eight applications[;] there is no evidence that Plaintiff incurred substantial expense and

1  performed substantial work in reliance on any such *permit* [and] [a]ccordingly, Get Outdoors
2  does not have any vested rights under the previous sign ordinance or its applications under that
3  ordinance.").

4        Accordingly, the Court recommends granting Defendant's motion to dismiss Plaintiff's
5  fourth cause of action for forfeiture.  The Court recommends granting leave to amend only to the
6  extent Plaintiff can plead a form of permit or its equivalent, with such requirements of specificity
7  and investment in relation to vested rights, satisfactory under the law above.

8                                              **V.**

9                          **CONCLUSION AND RECOMMENDATION**

10       For all of the above explained reasons, IT IS HEREBY RECOMMENDED that
11  Defendant's motion to dismiss be GRANTED IN PART AND DENIED IN PART as follows:

12       1.    Defendant's motion to dismiss all facial challenges to the Ordinance as barred by
13             the statute of limitations be GRANTED without leave to amend;

14       2.    Defendant's motion to dismiss Plaintiff's as-applied challenges as barred by the
15             statute of limitations be GRANTED with leave to amend subject to the parameters
16             explained herein;[26]

17       3.    Defendant's motion to dismiss for lack of association standing be DENIED;

18       4.    Defendant's motion to dismiss the procedural due process claim be GRANTED
19             without leave to amend;

20       5.    Defendant's motion to dismiss Plaintiff's regulatory taking claim be GRANTED
21             with leave to amend subject to the parameters explained herein;

22       6.    Defendant's motion to dismiss Plaintiff's as-applied claim for regulatory taking as
23             unripe be GRANTED with leave to amend subject to the parameters explained
24             herein;

25       7.    Defendant's motion to dismiss Plaintiff's second cause of action for substantive
26             due process violation be GRANTED with leave to amend subject to the

27  _____

28  [26]  To the extent all claims are dismissed pursuant to Defendant's first two challenges, the Court's other findings are
    alternative or additional grounds for dismissal.

1    parameters explained herein; and

2    8.    Defendant's motion to dismiss Plaintiff's fourth cause of action for forfeiture be

3    GRANTED with leave to amend subject to the parameters explained herein.

4    These findings and recommendations are submitted to the district judge assigned to this

5    action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen**

6    **(14) days** of service of these recommendations, any party may file written objections to the

7    findings and recommendations with the Court.   Such a document should be captioned

8    "Objections to Magistrate Judge's Findings and Recommendations."   The District Judge will

9    review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

10   636(b)(1)(C).   Plaintiff is advised that failure to file objections within the specified time may

11   result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014)

12   (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

13

14   IT IS SO ORDERED.

15   Dated:   **February 9, 2023**

UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28